

# In the Missouri Court of Appeals
# Eastern District

### DIVISION III

|  |  |  |
|---|---|---|
| In the Matter of: T.S.D. | ) | No. ED99499 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| | ) | |
| | ) | Honorable David B. Tobben |
| | ) | |
| | ) | FILED: January 28, 2014 |

Introduction

Marilyn D. ("Mother") appeals from the trial court's judgment finalizing the adoption of her biological son, T.S.D., by J.D. and M.D. The trial court found that because Mother willfully abandoned and willfully, substantially, and continuously neglected T.S.D. under Section 453.040(7), Mother's consent was not required for the adoption. On appeal, Mother claims three points of error. First, Mother claims that the trial court erred in failing to comply with the requirements of Sections 453.070, 453.077, and 453.110 in that the pre-adoption assessment and post-placement assessment reports were not admitted into evidence, and that the pre-adoption assessment was not ordered by the trial court. In her second and third points on appeal, Mother argues that the trial court's finding that she abandoned and neglected T.S.D. was against the weight of the evidence and not supported by substantial and competent evidence, thereby requiring her consent to the adoption. Because the trial court's judgment is not against the

1

weight of the evidence and is supported by substantial and competent evidence, we affirm the judgment of the trial court.

Factual and Procedural History

Viewed in the light most favorable to the trial court's judgment, the following evidence was adduced at trial. T.S.D. was born to Mother in the state of Washington on July 22, 1999. At the time of T.S.D.'s birth, Mother was married to J.D., although J.D. was not the biological father of T.S.D. Despite not being T.S.D.'s biological father, J.D. was present at his birth, cut his umbilical cord, and remained actively involved in T.S.D.'s life. Mother and J.D. separated in 2001, at which point T.S.D. lived with J.D. the majority of the time and went to school in J.D.'s school district. Mother and J.D.'s divorce was finalized on April 13, 2005.

In January 2005, J.D. moved to Missouri and T.S.D. moved in with Mother. Mother did not enroll T.S.D. in her school district, so T.S.D. did not attend school. In March 2005, Mother called J.D. and told him she "couldn't handle" the kids. J.D. then drove to Idaho to meet Mother and pick up T.S.D. and his older sister, D.D.[1] Since that time, T.S.D. and D.D. have lived with J.D. T.S.D. has only seen Mother once since 2005, when J.D. drove T.S.D. and D.D. to Washington for a month-long visit in 2006. After that visit, Mother would call T.S.D. and D.D. approximately three or four times a year. During a year-and-a-half to two-year period, Mother made no phone calls to the children. Prior to the filing of the petition for adoption, Mother sent T.S.D. and D.D. a total of three packages containing undersized clothing and a few token gifts. The packages contained far fewer gifts for T.S.D. than for D.D. Additionally, Mother collected $247 a month in child support from T.S.D.'s biological father, totaling approximately $21,000 over the years. Despite her receipt of child support for T.S.D., Mother sent only one check to J.D. for T.S.D.'s support. Mother also claimed T.S.D. as a dependent on her income taxes, but

---

[1] J.D. is the biological father of D.D.

2

has never requested that T.S.D. come live with her.  In the six months prior to the filing of this adoption action, Mother had no contact whatsoever with T.S.D.

In 2007, J.D. married his current wife, M.D.  On December 16, 2011, J.D. and M.D. filed a petition for transfer of custody and adoption of T.S.D.[2]  The petition alleged that Mother abandoned and neglected T.S.D. when she gave T.S.D. to J.D. in 2005, has seen T.S.D. only once since then, and has sent only "token gifts" from time to time.  J.D. and M.D. arranged for a domestic adoption home study which they filed simultaneously with their adoption petition.  The home study was prepared by Karla Jacquin ("Jacquin"), a self-employed, licensed clinical social worker.

An adoption hearing was held on May 16, 2012.  The trial court heard testimony from D.D., J.D., and M.D., as well as from Mother and Mother's fiancé.  The trial court also heard testimony from Jacquin, who testified as to the home study that she prepared for J.D. and M.D.[3]  Jacquin stated that she met with the family at least twice in their home, toured the home, collected references, conducted individual interviews with all family members, ordered criminal background checks, and reviewed the Missouri and national sex offender registries.  Jacquin testified that nothing in the criminal background checks caused her any concern.  Jacquin also testified that she had no concerns regarding the safety and welfare of T.S.D. in the home, the family's ability to care for, maintain, and educate T.S.D., and the financial ability of the family to care for T.S.D.  Based on the favorable home study, Jacquin stated that she would approve J.D. and M.D.'s adoption of the children.

The appointed guardian ad litem ("GAL") for the children also testified at the adoption hearing.  The GAL testified that she had the opportunity to review the home study completed by

---

[2] T.S.D.'s biological father signed a written consent to the termination of his parental rights and to the adoption of T.S.D. by J.D. and M.D.

[3] Counsel for Mother moved to strike the home study, despite the fact that it was not entered into evidence.  However, the motion to strike was denied.

Jacquin and all discovery, as well as to meet with J.D., M.D., D.D., T.S.D., Mother, Mother's sister, Mother's friend, and the children's school principals. Based on her investigation, the GAL recommended that the adoption of T.S.D. be approved. The GAL testified that T.S.D. does not have a bond with Mother and shared negative memories of his time with Mother. The GAL stated that T.S.D. was allowed to stay up until 2 a.m. when he stayed with Mother and lived on a diet of McDonald's and Ramen noodles. The GAL further testified that T.S.D. did not express any desire to visit Mother and in fact expressed apprehension and fear at the thought of having to visit or live with Mother.

The GAL then testified that T.S.D. had a very close bond with J.D. and M.D. and excelled academically and socially while in their care. The GAL also stated that T.S.D. had a fear of having to leave his home with J.D. and M.D. Based on her investigation, the GAL believed that it was in the best interest of T.S.D. for him to be adopted by J.D. and M.D. and "very strongly" felt that the adoption should be approved.

On June 7, 2012, the trial court entered its findings of fact and conclusions of law and its order transferring custody for adoption. The trial court found that under Section 453.040(7) Mother willfully abandoned T.S.D. for more than six months prior to the filing of the petition and willfully, substantially, and continuously neglected T.S.D. by not providing necessary care and protection. Therefore, Mother's consent to the adoption was not required. The trial court further held that transfer of custody was in the best interest of T.S.D. and ordered that custody of T.S.D. be transferred to J.D. and M.D. for subsequent adoption.

T.S.D. remained with J.D. and M.D. for the statutorily required six-month placement period. During that period, Jacquin completed three post-placement assessment reports based on a combination of six phone calls and home visits with the family. Based on her findings, Jacquin

4

felt that adoption was in the best interest of T.S.D. and recommended that the adoption be finalized.

On December 10, 2012, the trial court held an adoption finalization hearing. Neither Mother nor her counsel attended the hearing. However, both J.D. and M.D. testified that they believed adopting T.S.D. was in the child's best interest. The GAL also testified that she reviewed the post-placement assessment reports completed by Jacquin and felt confident in her recommendation that the adoption be finalized. The trial court then entered its order finalizing the adoption and terminating all parental rights and duties of T.S.D.'s biological parents. This appeal follows.

## Points on Appeal

In her first point on appeal, Mother claims that the trial court erred in finding Mother's consent to the adoption was not necessary because she abandoned and neglected T.S.D. Specifically, Mother claims the trial court failed to comply with the requirements of Sections 453.070, 453.077, and 453.110 in that the pre-adoption assessment and post-placement assessment reports were not admitted into evidence and the pre-adoption assessment was not ordered by the trial court as required by statute. In her second point on appeal, Mother argues that the trial court erred when it found she abandoned T.S.D., thereby eliminating the requirement of her consent to the adoption, because such finding was against the weight of the evidence and not supported by substantial and competent evidence. In her final point on appeal, Mother similarly asserts that the trial court erred in finding that she neglected T.S.D. because such finding was against the weight of the evidence and not supported by substantial and competent evidence.

5

<u>Standards of Review</u>

In adoption proceedings, the best interests and welfare of the child is the primary and paramount consideration. <u>In re C.D.G.</u>, 108 S.W.3d 669, 674 (Mo. App. W.D. 2002) (citing <u>In re Drew</u>, 637 S.W.2d 772, 778 (Mo. App. W.D. 1982)). This Court gives greater deference to the trial court's determinations of credibility when custody of a minor child is involved than in other civil cases. <u>Id.</u> "Generally, we will not disturb the judgment below unless the welfare of the child requires another disposition." <u>Id.</u>

This Court's review of adoption proceedings is governed by <u>Murphy v. Carron</u>, 536 S.W.2d 30 (Mo. banc 1976). <u>H.W.S. v. C.T.</u>, 827 S.W.2d 237, 240 (Mo. App. E.D. 1992). We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. <u>Murphy</u>, 536 S.W.2d at 32. "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." <u>Id.</u> This Court reviews the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order. <u>H.W.S.</u>, 827 S.W.2d at 240. We also accept as true the evidence and permissible inferences favorable to the judgment and disregard all contrary evidence and inferences. <u>Id.</u> "While reference to other abandonment and neglect cases may provide some helpful guidance in reaching a decision, the very nature of these proceedings is such that each case must turn on its own unique set of facts." <u>Matter of A.L.H.</u>, 906 S.W.2d 373, 376 (Mo. App. E.D. 1995) (citing <u>S.C.H. v. C.W.H.</u>, 587 S.W.2d 945, 947 (Mo. App. E.D. 1979)).

We note that Mother did not object to the trial court's use of the post-placement assessment reports at trial. Accordingly, our review of Mother's argument with regard to those reports is limited to plain error review. "In determining whether to exercise its discretion to

6

provide plain error review, the appellate court looks to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." In re Adoption of C.M.B.R., 332 S.W.3d 793, 809 (Mo. banc 2011) (quoting In re R.S.L., 241 S.W.3d 346, 351 (Mo. App. W.D. 2007)). "Even statutory errors that are evident, obvious, and clear, must result in a manifest injustice or miscarriage of justice." Id. (citing In re Z.L.R., 306 S.W.3d 632, 638 (Mo. App. S.D. 2010)).

Discussion

**I. The trial court did not err in its application of the adoption code.**

Mother's overriding challenge to the trial court's order and judgment is that she did not consent to the adoption of T.S.D., which is required under Missouri law. The initial prong of her challenge is raised in Mother's first point on appeal. Therein, Mother argues that the trial court's finding that her consent to the adoption was not necessary because she abandoned and neglected T.S.D. is erroneous because the trial court failed to comply with the requirements of Sections 453.070, 453.077, and 453.110. Specifically, Mother asserts that the investigational reports required under these statutes were not received into evidence and that the pre-adoption assessment report was not ordered by the trial court as required, but was independently obtained by J.D. and M.D. and filed by them with their petition for adoption. Mother maintains that these errors are fatal and require reversal of the trial court's judgment and order of adoption. We disagree.

In adoption proceedings, the best interests and welfare of the child are the court's primary concern and are paramount over all other considerations. In re C.D.G., 108 S.W.3d at 674. Section 453.005 requires this Court to construe the statutes at hand "so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and

7

stable home." Section 453.005. At the same time, adoption statutes are to be strictly construed in favor of the rights of the natural parents in controversies involving the termination of the relationship of parent and child. In re Mayernik, 292 S.W.2d 562, 569 (Mo. 1956). However, such construction should not be so narrow as to defeat the manifest intent of the legislature as evidenced by the code as a whole. R.F.N. v. G.R., 546 S.W.2d 510, 512 (Mo. App. St.L. 1976). "The degree of compliance is not literal but substantial." Id. (citation omitted).

Section 453.070 requires that adoptions be preceded by an investigation as to whether the child is suitable for adoption by the petitioners and whether the petitioners are suitable as parents for the child. Section 453.070.1. The court having jurisdiction over the adoption shall direct the investigations to be made either by the division of family services of the department of social services, a juvenile court officer, a licensed child-placement agency, a social worker, a professional counselor, a licensed psychologist associated with a licensed child-placement agency, or another suitable person appointed by the court. Section 453.070.2. The pre-adoption assessment shall then be embodied in a written report and submitted to the petitioners and to the trial court prior to the scheduled hearing of the adoptive petition. Section 453.070.2; Section 453.070.4. Similarly, Section 453.077 dictates that a post-placement assessment be conducted six months after the child has been placed with the petitioners. Section 453.077.1. The post-placement assessment must include a report on the emotional, physical, and psychological status of the child. Id.

Mother contends that the pre-adoption assessment and post-placement reports were never formally introduced into evidence during the adoption proceedings, which fatally flaws the proceedings and the order of adoption. Mother cites the general proposition that the mere filing of a document does not put it before the trial court as evidence. See Hopkins v. Hopkins, 664 S.W.2d 273, 274 (Mo. App. E.D. 1984).

8

While Sections 453.070 and 453.077 require the preparation and filing of a pre-adoption and post-placement assessment report, neither statute contains an express requirement that the reports be admitted into evidence during the trial or adoption finalization hearing. And although we agree with Mother that the mere filing of a document with the trial court generally does not render such document as evidence, we are guided by the decisions of the Missouri courts, which have addressed the specific issue of the treatment of adoption assessment reports.

In <u>In re Drew</u>, the appellant claimed that the adoption decree did not comply with Section 453.070 because the pre-adoption assessment report was not admitted into evidence. <u>In re Drew</u>, 637 S.W.2d at 774. In that case, the director of the division of family services testified at trial as to the home studies that had occurred and to the report that had been filed with the court. <u>Id.</u> Although the investigator also testified as to interviews with and observations of the parties and the children, the written assessment report was not admitted into evidence. <u>Id.</u> In upholding the adoption, the court noted that although the pre-adoption assessment report must be filed in compliance with the statute, "disposition of the case depends on the evidence and if the evidence supports the judgment, it is entitled to affirmance." <u>Id.</u> at 775. The court found that substantial and competent evidence existed apart from the written report to support the judgment, and "any procedural defect as to rejection or receipt of the report in evidence is not of a dimension to warrant reversal of that result." <u>Id.</u>

Similarly, although neither the pre-adoption assessment report nor the post-placement assessment reports were admitted into evidence during the adoption proceeding in this case, the record before us leaves no doubt that the mandatory statutory assessments were performed and submitted to the court prior to the adoption hearings, per Sections 453.070 and 453.077. The trial court made a specific factual finding that the home study and background checks were made and submitted to the trial court as required by Section 453.070. Furthermore, Jacquin testified as

9

to the contents of the pre-adoption assessment report during the adoption hearing. The trial court also heard testimony from the GAL, who reviewed both the pre-adoption assessment report and the post-placement reports in addition to conducting her own interviews with J.D., M.D., D.D., T.S.D., Mother, Mother's sister, and T.S.D.'s school principal. Based on her investigation, the GAL recommended that the adoption be approved. The trial court further heard testimony from J.D., M.D., D.D., Mother, and Mother's fiancé, and we defer to the trial court's determinations of credibility. See In re C.D.G., 108 S.W.3d at 674. Because the trial court's judgment is supported by substantial, competent evidence apart from the written pre-adoption assessment report and the post-placement assessment reports, we hold that any procedural defect as to receipt of the reports in evidence is minimal, and does not warrant reversal of the trial court's judgment. See In re Drew, 637 S.W.2d at 775. As a result, the trial court did not err, plainly or otherwise, in its application of the adoption code.

Mother also contends that the trial court erred in ordering the adoption because Section 453.070.2 requires that the pre-adoption assessment be made by one of the permissible investigators, "as directed by the court having jurisdiction." Section 453.070.2. Mother argues that the trial court did not comply with the statutory mandate of Section 453.070 because it never entered an order directing an investigation, and, therefore, the trial court's judgment is invalid. We are not persuaded.

The purpose of the investigative report required by Section 453.070 is to apprise the court of the circumstances of the parties to an adoption proceeding with respect to the best interests of the child. In re K.K.J., 984 S.W.2d 548, 554 (Mo. App. S.D. 1999). While the report is mandatory, the report does not adjudicate the issues presented, as that obligation resides exclusively with the trial court. Id.; see also In re C.M.B.R., 332 S.W.3d at 812–13. Rather, the

10

report is a tool provided to the trial court to assist in its determination of the best interests of the child. In re K.K.J., 984 S.W.2d at 554.

Although Mother cites In re C.M.B.R. to support her assertion that the trial court's failure to strictly comply with the requirements of the adoption code voids the trial court's judgment, that case is inapposite as its facts are distinguishable from the facts before us. In In re C.M.B.R., no pre-adoption assessment reports examining whether the child was suitable for adoption or the adoptive parents' fitness to be parents were filed with the trial court. In re C.M.B.R., 332 S.W.3d at 813. As a result, the trial court was not fully briefed as to the best interests of the child. Id. To the contrary, it is undisputed in this case that a pre-adoption assessment report and post-placement reports were completed and submitted to the trial court prior to the adoption hearing. We acknowledge Mother's concern that the pre-adoption assessment report was obtained by J.D. and M.D., and was not ordered by the trial court. These facts indicate a potential for bias in the assessment submitted to the trial court.[4] However, the record is clear that these assessment reports were only tools used by the trial court to render its judgment. In addition to these assessment reports, the trial court was also provided with substantial evidence as to the child's best interests through the testimony of the GAL, J.D., M.D., and D.D. Because the trial court was apprised fully as to the best interests of T.S.D., we hold that the trial court did not err in its application of the adoption code. See In re C.D.G., 108 S.W.3d at 674 ("Generally, we will not disturb the judgment below unless the welfare of the child requires another disposition.").

We cannot conclude that the preparation and handling of the pre-adoption assessment and post-placement reports by the trial court constituted prejudicial error requiring reversal of the judgment and order of adoption. Point One is denied.

---

[4] Notably, Mother does not contest the accuracy of the contents of the report.

**II.    The trial court's finding that Mother abandoned and neglected T.S.D. is supported by substantial and competent evidence and is not against the weight of the evidence.**

In her second and third points on appeal,[5] Mother asserts that the trial court erred when it ruled that her consent to the adoption was not required because she abandoned and neglected T.S.D.  Mother claims the trial court's judgment was against the weight of the evidence and not supported by substantial and competent evidence.

In its judgment, the trial court concluded that Mother's consent to the adoption was not required pursuant to Section 453.040(7).  Section 453.040(7) provides that consent to the adoption of a child is not required of:

> (7)  A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.]

The terms "abandonment" and "neglect" in Section 453.040 are used in the disjunctive; thus, "either ground, if supported by substantial evidence, will obviate the need for parental consent" to an adoption.  In re J.M.J., 404 S.W.3d 423, 432 (Mo. App. W.D. 2013) (quoting In re K.L.C., 9 S.W.3d 768, 772 (Mo. App. S.D. 2000)).

Abandonment has been defined as the "voluntary and intentional relinquishment of custody of the child to another with the intent to never again claim the rights of a parent or perform the duties of a parent" or as the intentional withholding by the parent of his or her care, love, affection, protection, and presence, without just cause or excuse.  H.W.S., 827 S.W.2d at 239–40.  Neglect, on the other hand, "focuses on physical deprivation or harm, and has been characterized as 'a failure to perform the duty with which the parent is charged by the law and by

---

[5] Because Mother's claims of error with regard to abandonment and neglect require a discussion of the same statute and evidence, we have combined our discussion of Mother's second and third points on appeal.

conscience.'" In re J.M.J., 404 S.W.3d at 432 (quoting In re C.M.B., 55 S.W.3d 889, 894 (Mo. App. S.D. 2001)). Neglect is the intent to forego parental duties, which includes both the obligation to provide financial support for a minor child, as well as the obligation to maintain meaningful contact with the child. Id.

Abandonment and neglect must be established by clear, cogent and convincing evidence that "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition." In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984). The fact finder's mind must be left with "an abiding conviction that the evidence is true." Id. The clear, cogent, and convincing standard of proof may be met even though the trial court has contrary evidence before it. Id. Furthermore, the existence of evidence in the record that might have supported a different conclusion does not necessarily demonstrate that the trial court's judgment is against the weight of the evidence. Id.

To determine whether abandonment or neglect has occurred requires an examination of the parent's intent. Id. at 455. The parent's intent, an inferred fact, is determined by considering all of the evidence of the parent's conduct during, before, and after the statutory period. Id. However, the greatest weight is given to conduct during the statutory period and the least weight to conduct occurring after the petition was filed. Matter of A.L.H., 906 S.W.2d at 376. In reviewing the parent's intent, this Court defers to the trial court because "it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." In re Adoption of W.B.L., 681 S.W.2d at 455. "The trial court is in an especially advantageous position to determine the intent of a parent-witness in an adoption case." Id.

In this case, the trial court found that T.S.D. has been in the care, custody, and control of J.D. since March 2005 and had only seen Mother once since then, during a month-long visit in

13

2006. The trial court also found that Mother made no further requests or arrangements for visitation with T.S.D. since that time, and that Mother had only periodic and irregular phone contact with T.S.D., at one point making no phone calls for a period of nearly two years. In January 2010, Mother requested that D.D. move back to Washington with her, but never requested that T.S.D. come back to live with her. The record indicates that during the statutory six-month period prior to the filing of the petition, Mother had no contact whatsoever with T.S.D.

The trial court also found that Mother provided periodic and infrequent gifts since 2005. According to the record, from 2005 to the filing of the petition, Mother sent three packages to the children. The packages contained undersized clothing and token gifts, of which about ten percent were for T.S.D. After being served with the adoption petition, Mother sent several packages to the children.

The trial court further found that Mother provided minimal monetary support for T.S.D. Mother continued to claim T.S.D. as a dependent on her income taxes even though he had not been in her custody since 2005. Despite collecting monthly child support payments totaling about $21,000 from T.S.D.'s biological father, Mother sent only one $400 check to J.D. At trial, Mother claimed that the $21,000 went toward the gifts she sent to the children; however, documentation Mother presented included receipts from a casino, Victoria's Secret, and Sally Beauty Supply. Mother then stated that she also used the money for gas and food for herself and her other children. Mother also claimed to have sent additional checks to J.D., but several of those checks were still attached to Mother's checkbook.

Although Mother testified at trial that J.D. prevented her from seeing her children, D.D. testified that J.D. said the children could visit Mother if they wanted to. J.D. also testified that he

14

has never tried to keep Mother from seeing T.S.D., and T.S.D. was allowed to call Mother at any time. Whenever the family moved, Mother was given their new address and phone number.

After reviewing the record, we find substantial and competent evidence to support the trial court's determination that Mother abandoned and neglected T.S.D. within the meaning of Section 453.040(7). Furthermore, even though Mother presented evidence to the contrary, after examining the entire record we are not convinced that the trial court's judgment is against the weight of the evidence. The trial court was in the best position to judge the credibility of the witnesses, as well as their sincerity and character, and we defer to those credibility determinations. Matter of A.L.H., 906 S.W.2d at 376. Because there is substantial evidence to support the trial court's determination, and this Court does not have a firm belief that the trial court's judgment and order of adoption is against the weight of the evidence, the trial court's judgment must be affirmed.

## Conclusion

The judgment of the trial court is affirmed.

_____
Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

15