

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **E.K.L. AND K.E.L.,** | **WD79006** |
| **Respondents,** | **OPINION FILED:** |
| **v.** | **May 3, 2016** |
| **A.L.B.,** | |
| **Appellant.** | |

**Appeal from the Circuit Court of Henry County, Missouri**
**The Honorable James Kelso Journey, Judge**

**Before Division Three:**
**Gary D. Witt, P.J., James Edward Welsh, and Anthony Rex Gabbert, JJ.**

A.L.B. appeals from the circuit court's judgment terminating his parental rights to his daughter, K.R.B, without his consent and granting E.K.L.'s and K.E.L.'s petition to adopt K.R.B. The circuit court found, pursuant to section 453.040(7), RSMo 2000, that A.L.B. willfully abandoned and willfully neglected his daughter. A.L.B. contends that the evidence was insufficient to prove by clear, cogent, and convincing evidence that he willfully abandoned or willfully neglected this daughter. We affirm the circuit court's judgment.

"Consent of the natural parents or involuntary termination of parental rights is a prerequisite to adoption under chapter 453." *In re the Adoption of C.M.B.R.*, 332 S.W.3d 793, 819 (Mo. banc 2011). When terminating parental rights in an adoption proceeding pursuant to

section 454.040(7), the clear, cogent, and convincing standard of proof applies in the trial court. *Id*. Our review in this adoption proceeding is governed by the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In the Matter of T.S.D.*, 419 S.W.3d 887, 891 (Mo. App. 2014). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the circuit court erroneously declares or applies the law. *Id*. We view the evidence in the light most favorable to the judgment and disregard any evidence or inferences to the contrary. *Id*.

Section 453.040 provides:

> The consent to the adoption of a child is not required of:
>
> . . .
>
> (7) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.]

Thus, in this case, we must determine whether substantial evidence supported the circuit court's judgment that A.L.B. willfully abandoned or willfully neglected his daughter for a period of at least six month immediately prior to the filing of the petition for adoption in this case. The terms "abandonment" and "neglect" in section 453.040 are used in the disjunctive; thus, "'either ground, if supported by substantial evidence, will obviate the need for parental consent' to an adoption." *In re J.M.J.*, 404 S.W.3d 423, 432 (Mo. App. 2013) (quoting *In re K.L.C.*, 9 S.W.3d 768, 772 (Mo. App. 2000)). Because substantial and competent evidence supported the circuit court's determination that A.L.B. neglected K.R.B., we recount the facts surrounding the neglect

2

in the light most favorable to the judgment and need not focus our attention on the abandonment issue.

K.R.B. was born on October 8, 2010. There is no dispute that A.L.B. is the natural father of K.R.B. On September 18, 2014, K.R.B.'s mother, K.E.L., and her husband, E.K.L. filed a petition for adoption of K.R.B. with the circuit court. They alleged that A.L.B. "for a period of greater than six (6) months prior to the date of the filing of this Petition has . . . willfully, substantially, and continuously neglected to provide parental care and protection . . . and, therefore his consent to this adoption is not necessary." The circuit court held a trial on July 23, 2015.

The evidence established that A.L.B. has been incarcerated since K.R.B.'s birth and that the earliest he will be released from incarceration is June 2023. Throughout his incarceration, A.L.B. has not provided any monetary support for K.R.B. He testified, "I personally haven't sent any [money]." He also admitted that he had not sent any money to support his daughter in the six months prior to the filing of the adoption petition.[1] Although A.L.B. said that his mother provided monetary support to K.R.B., he said that he "honestly didn't get into" how much because he left that between his mother and K.E.L. regarding "the amount that she needed and for what." A.L.B. admitted that he receives a wage of $1.05 a day while incarcerated and that the money is available for him to use at his discretion. He said that he did not send any of that money to K.R.B. for support. He also acknowledged that his mother and others would put money into his prison account on a monthly basis for his discretionary use and that he never sent any of that money to K.R.B. for support. He said that he never tried or attempted to transfer any

---

[1]The evidence established that $7.80 was taken out of A.L.B.'s account monthly for child support for another child.

3

money from his prison account for K.R.B.'s support because his mother was "helping take care of them on the streets to provide support, to make sure they had what they needed and wasn't [sic] doing without." He said that he did not know how much money his mother provided on his behalf and did not know of the specific dates or time periods when that financial support was provided. He said that he could have sent money to provide financial support of K.R.B. if he had had an address for K.E.L. He said that he only had K.E.L.'s old address, which was in Osawatomie, Kansas, and that he did not have K.E.L.'s new Warsaw, Missouri address. A.L.B. further acknowledged that, since the filing of the petition of adoption in this case, he has provided no support for K.R.B.

A.L.B.'s mother said that she never gave money to K.E.L. for K.R.B.'s support but that she made sure "they had enough diapers and groceries." She also said that, in the six months prior to the filing of the adoption petition in this case, A.L.B. did not give her any direction that she was to take money and send it to K.E.L. She further admitted that, in the six months prior to the filing of the petition for adoption, she never delivered diapers, food, cards, letters, or gifts of any sort from A.L.B. to K.R.B. A.L.B.'s mother also claimed that she did not have K.E.L.'s address.

When asked if A.L.B.'s mother provided her with any financial support for K.R.B. or if A.L.B.'s mother gave her money to buy diapers or food, K.E.L said, "Not that I remember." She said that she never received any money from A.L.B.'s mother except for money in a birthday card. K.E.L. said that the money was for her birthday and not K.R.B.'s birthday. K.E.L. acknowledged that A.L.B.'s mother gave K.R.B. gifts for her birthday and Christmas. K.E.L. further acknowledged that she moved to Tonganoxie, Kansas, from Osawatomie, Kansas, in September 2013, and that she later moved to Warsaw, Missouri, in that same month. Although

4

K.E.L. testified that she did not remember whether she told A.L.B. that she was moving to Tonganoxie or to Warsaw and that she did not remember whether she sent him her new addresses, K.E.L. said that, each time she moved, she left change-of-address cards with the post office and that mail addressed to old addresses were forwarded to her new addresses.

The circuit court issued its judgment on August 12, 2015, finding that A.L.B. "has for a period of six (6) months prior to the date of the filing of the Petition . . . willfully, substantially, and continuously neglected to provide for the necessary care, protection and support of the minor child such that his Consent to Adopt is not required[.]"[2] The court also found, and A.L.B. does not contest this finding, that "[t]he adoption of the minor child by Petitioners would be in the child's best interest."

A.L.B. asserts that the evidence was insufficient to prove by clear, cogent, and convincing evidence that he willfully abandoned or willfully neglected this daughter. As used in section 453.040(7), the term "neglect" "'focuses on physical deprivation or harm, and has been characterized as "a failure to perform the duty with which the parent is charged by the law and by conscience."'" *In re J.M.J.*, 404 S.W.3d at 432 (*quoting In re C.M.B.*, 55 S.W.3d 889, 894 (Mo. App. 2001)). "Neglect is the intent to forego parental duties, which includes both the obligation to provide financial support for a minor child, as well as the obligation to maintain meaningful

---

[2]In his second point relied on A.L.B. contends that the circuit court erred in failing to set forth in its judgment the facts upon which it based its judgment. He asserts that the court was required to make findings of fact pursuant to section 453.080.3, RSMo Cum. Supp. 2013, which says that "a decree shall be issued setting forth the facts and ordering that from the date of the decree the adoptee shall be for all legal intents and purposes the child of the petitioner or petitioners." Section 453.080 "does not require a recital of specific findings of an exception to parental consent." *In the Matter of C.W.*, 753 S.W.2d 933, 937 (Mo. App. 1988). Moreover, A.L.B. did not request that that circuit court make specific findings until after the circuit court had issued its judgment. "Such findings and conclusions are not required of the trial court unless requested." *Id.* at 938. Rule 73.01(c) provides: "The court may, or if requested by a party shall, include in the opinion findings on the controverted material fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow." Further, the rule states, "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

contact with the child." *In the Matter of T.S.D.*, 419 S.W.3d at 895. To determine whether neglect has occurred, we examine the parent's intent, "which is inferred from the parent's conduct before, during, and after the six-month period preceding the filing of the adoption petition." *In re J.M.J.*, 404 S.W.3d at 432. "In reviewing the parent's intent, this Court defers to the trial court because 'it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *In the Matter of T.S.D.*, 419 S.W.3d at 895-96 (quoting *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984)).

We are mindful that neglect "must be established by clear, cogent and convincing evidence that 'instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition'" and that the "fact finder's mind must be left with 'an abiding conviction that the evidence is true.'" *In the Matter of T.S.D.*, 419 S.W.3d at 895 (quoting *In re Adoption of W.B.L.*, 681 S.W.2d at 454). The clear, cogent, and convincing standard of proof, however, may be met even though the circuit court has contrary evidence before it. *In the Matter of T.S.D.*, 419 S.W.3d at 895.

The record established that, before, during and after the six months preceding the filing of the adoption petition, A.L.B. provided absolutely no financial support, gifts, or cards for K.R.B. A.L.B.'s incarceration does not relieve him of the obligation to make at least minimal financial contributions for support of the child. *In re the Adoption of C.M.*, 414 S.W.3d 622, 656 (Mo. App. 2013). "'The financial support of a minor child is a continuing parental obligation, and a parent has a duty to contribute as much as he or she can.'" *Id.* (citation omitted). Indeed, financial contributions, "'no matter how minimal, demonstrate[ ] a parent's intent to continue the parent-child relationship.'" *Id.* (citation omitted). Although an incarcerated parent's contribution

6

"'will not significantly assist in providing the parent's child with essentials,'" it does show "the parent's intent to continue the parent-child relationship." *Id*. at 657 (citation omitted). "Evidence of this intent is lacking when the parent fails to make any contribution, no matter how small the amount." *Id*. Although A.L.B. had funds available to him in his prison account, he made no effort to contribute anything toward K.R.B.'s support.

A.L.B. contends that he could have sent money to provide financial support of K.R.B. if had had an address for K.E.L. He said that he only had K.E.L.'s old address, which was in Osawatomie, Kansas, and that he did not have K.E.L.'s new Warsaw, Missouri address. The record established, however, that, although K.E.L. could not remember whether or not she provided A.L.B. with her Warsaw address, K.E.L. said that she left change-of-address cards with the post office and that mail addressed to old addresses were forwarded to her new address in Warsaw. During direct examination, A.L.B. admittedly said that, after he found out that K.E.L. moved, he did not send any cards or letters to her old address.[3]

A.L.B. contends that the evidence established that he had requested his mother to provide financial support for K.R.B. on his behalf and that this met his obligation to provide support for K.R.B. The record, however, established that A.L.B.'s mother did not provide any support for K.R.B. on behalf of A.L.B. during the six months prior to the filing of the petition for adoption. A.L.B.'s mother admitted that she never even attempted to deliver diapers, food, cards, letters, or gifts of any sort from A.L.B. to K.R.B. during this time period.

---

[3] On cross-examination, A.L.B. said that he tried to mail a Valentine's Day card to K.R.B. in 2014 but he "got it back." The circuit court, however, as the sole arbiter of credibility, did not have to believe this testimony. *In the Interest of C.L.*, 335 S.W.3d 19, 30 (Mo. App. 2011). Likewise, the circuit court could disbelieve A.L.B.'s testimony that he did not attempt communication with K.E.L. for want of an address.

7

Substantial evidence supported the circuit court's determination that A.L.B. willfully neglected K.R.B. for a period of at least six months immediately prior to the filing of the petition for adoption. The circuit court, therefore, did not err in finding that the adoption and resulting termination of A.L.B.'s parental rights was in K.R.B.'s best interests. We affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.