In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

In the Matter of: M. N. V. ) No. ED108888
 )
 ) Appeal from the Circuit Court of
 ) Franklin County
 ) 19AB-JU00092
 )
 ) Honorable Joseph W. Purschke
 )
 ) Filed: July 13, 2021

Angela T. Quigless, P.J., Kurt S. Odenwald, J., and James M. Dowd, J.

 Introduction

 Appellant Matthew W. Vanness, Jr. (Father) appeals the judgment of the Juvenile Division

of the Franklin County Circuit Court terminating his parental rights in M.N.V., his biological

daughter, and approving the adoption of M.N.V. by Petitioners Crystal and Everette Winters, a

married couple. The court found that because Father had neglected and abandoned M.N.V., his

consent to her adoption was not required pursuant to section 453.040(7)1 and his parental rights

were terminated, and that because M.N.V. was lawfully in both Winters' custody for at least six

months prior to the entry of the adoption decree and the adoption was in M.N.V.'s best interest,

the adoption was approved.

1
 All statutory references are to RSMo 2018 unless otherwise indicated.
 On appeal, Father argues three points of error. In his first point, he asserts that the court

did not have jurisdiction to grant the Winters’ adoption because the statute’s requirement was not

met that M.N.V. be in the lawful custody of the adoptive parents for at least six months before

entry of the adoption decree. In his second point, Father argues that the court’s determination that

he abandoned and neglected M.N.V. within the meaning of section 453.040(7) was not supported

by substantial and competent evidence. And in his third point, Father argues that the court’s

finding that the adoption and the termination of his parental rights was in M.N.V.’s best interest

was against the weight of the evidence.

 We affirm. First, we affirm the trial court's judgment terminating Father's parental rights

and its finding that his consent to the adoption was unnecessary based on the competent and

substantial evidence that Father neglected and abandoned M.N.V. within the meaning of the

statute. We also affirm the judgment approving the adoption of M.N.V. by Crystal Winters based

on the undisputed competent and substantial evidence (1) that M.N.V. had been in Crystal Winters'

actual and lawful custody for well over six months prior to the entry of the adoption decree, and

(2) that the adoption by Crystal Winters was in M.N.V.'s best interest.

 As for the adoption by Everette Winters, we also affirm based on our holding that as the

spouse since 2015 of M.N.V.'s court-appointed guardian Crystal Winters, Everette Winters'

custody of M.N.V. was both actual and lawful within the meaning of section 453.080 and the

record is replete with support that M.N.V.'s adoption by Everette Winters is in M.N.V.'s welfare

and best interest as well as consistent with her entitlement to a permanent and stable home.

 Background

 M.N.V. was born to Father and Mother, Shelby N. Thrower, on July 12, 2012. M.N.V.

lived with her biological parents on and off for approximately eight months before she was

 2
removed from Father’s care by the division of family services in 2013. She was placed in the

exclusive care of Father’s niece, Petitioner Crystal Winters,2 who had been helping to care for

M.N.V. since she was two weeks old. In 2014, the Probate Division of the Circuit Court of

Franklin County appointed Crystal Winters M.N.V.’s legal guardian.3 At that time, Ms. Winters

and Petitioner Everette Winters were in a romantic relationship and Mr. Winters assisted in the

care of M.N.V. The two married in 2015.

 On April 22, 2019, the Winters filed their petition to adopt M.N.V. in which they alleged

pursuant to the statute that M.N.V.'s biological parents had willfully abandoned her and had

willfully, substantially, and continuously neglected her. Specifically, the Winters alleged that

neither parent had done anything monetarily or otherwise to help with M.N.V.’s care and support,

that neither made any genuine attempts to see or maintain a relationship with M.N.V., and that at

the time the petition was filed, neither parent had seen or spoken to M.N.V. in over two years. As

a result, they alleged M.N.V.'s biological parents' consent to her adoption was not required

pursuant to section 453.040(7). Furthermore, the Winters averred that they had the ability to

properly care for, maintain, and educate M.N.V., and that they had been doing so while M.N.V.

was in their lawful and actual custody for well over the six-month period required for an adoption

pursuant to section 453.080.

 The court heard the matter on March 9, 2020, pursuant to section 453.080(1), to determine

whether the Winters’ adoption of M.N.V. should be finalized. As a result of its findings that (1)

M.N.V. had been in the lawful and actual custody of the Winters since at least 2014 when Ms.

2
 Crystal Winters' name before her marriage to Everette Winters was Crystal Lynn Hunt. This
was the name on the original 2014 guardianship order. The order was amended on April 22,
2019 to reflect her name change. For clarity, we will use Crystal Winters throughout.
3
 Both biological parents filed a Waiver of Right to Be Appointed Guardian of M.N.V. and
requested the appointment of Crystal Hunt as M.N.V.’s guardian.

 3
Winters became M.N.V.'s court-appointed guardian, well beyond the statutorily required six-

months, and (2) that M.N.V.’s biological parents' consent was not required under section 453.040

in light of the court's finding that they had abandoned and neglected her, the court granted the

Winters’ adoption petition and the resulting termination of M.N.V.’s biological parents' parental

rights. This appeal by Father follows.4

 Standard of Review

 In adoption proceedings such as this one, the best interest and welfare of the child is the

primary and paramount consideration. In re T.S.D, 419 S.W.3d 887, 891 (Mo. App. E.D. 2014).

Section 453.005 requires this Court to construe the adoption code to promote the best interests and

welfare of the child in recognition of the entitlement of the child to a permanent and stable home.

Section 453.005(1).

 This Court reviews whether there was clear, cogent, and convincing evidence to support a

statutory ground for terminating parental rights or to support a finding that a parent’s consent is

not necessary for adoption pursuant to section 453.040. H.W.S. v. C.T., 827 S.W.2d 237, 240 (Mo.

App. E.D. 1992) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). See also In the

Interest of J.P.B., 509 S.W.3d 84, 90 (Mo. banc 2017); J.A.R. v. D.G.R., 426 S.W.3d 624 (Mo.

banc 2014); In re Adoption of C.M.B.R., 332 S.W.3d 793, 815 (Mo. banc 2011) (abrogated on

other grounds by S.S.S. v. C.V.S, 529 S.W.3d 811 (Mo. banc 2017)). Under Murphy v. Carron,

536 S.W.2d at 32, we will affirm the lower court’s judgment unless there is no substantial evidence

to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

4
 There is nothing in the record here indicating that Mother objected to the approval of the
adoption petition or the termination of her parental rights. She is not a party to this appeal.

 4
 Appellate courts should exercise with caution the power to set aside a lower court’s

judgment on the ground that it is not supported by the evidence. S.S.S., 529 S.W.3d at 815. The

clear, cogent, and convincing standard of proof may be met even though the lower court has

contrary evidence before it. Id.; see also T.S.D., 419 S.W.3d at 895 (citing In re Adoption of

W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984)). This Court reviews the facts, and reasonable

inferences therefrom, in the light most favorable to the judgment and disregards all contrary

evidence and inferences. Id. at 891 (citing Matter of A.L.H., 906 S.W.2d 373, 376 (Mo. App. E.D.

1995)). Generally, this Court will not disturb the lower court’s judgment unless the welfare of the

child requires another disposition. Id.

 Discussion

1. The court’s judgment terminating Father's parental rights and the conclusion that

 Father's consent to the adoption was not required based on the findings that Father

 abandoned and neglected M.N.V. are supported by substantial and competent

 evidence.

 Father challenges the court's finding that he abandoned and neglected M.N.V. for at least

six months prior to the filing of the Winters’ adoption petition. We find there is substantial and

competent evidence supporting both findings.5

 The United States Supreme Court has long recognized that the relationship between parent

and child is one of the oldest constitutionally protected fundamental rights and liberty interests. In

Interest of F.L.M., 561 S.W.3d 474, 478-79 (Mo. App. ED 2018) (citing Troxel v. Granville, 530

U.S. 57, 65 (2000); Stanley v. Illinois, 405 U.S. 645, 651 (1972)). Therefore, a prerequisite to any

5
 Though the court found both abandonment and neglect, a finding of abandonment or neglect is
sufficient to satisfy the requirements of section 453.040(7).

 5
adoption is the consent of the natural parents or the involuntary termination of their parental rights.

A.L.H., 906 S.W.2d at 375 (citing Matter of J.F.K., 853 S.W.2d 932, 934 (Mo. banc 1993)).

 Termination of parental rights is among the most serious acts that a court can undertake.

Id.; see also In re L.J.D., 352 S.W.3d 658, 662 (Mo. App. E.D. 2011) (quoting In re K.A.W., 133

S.W.3d 1, 12) (“The termination of parental rights has been characterized as tantamount to a civil

death penalty.”) Accordingly, there must be a strong basis for terminating parental rights in

substantial and sound evidence. Id. One such basis is the finding that the natural parent abandoned

or neglected their child within the meaning of section 453.040, which also renders their consent to

the adoption unnecessary. Id.

 Pursuant to section 453.040(7), a parent’s consent to the adoption of a child is not required

when:

 “A parent who has for a period of at least six months […] immediately prior to the filing

 of the petition for adoption, willfully abandoned the child or, for a period of at least six

 months immediately prior to the filing of the petition for adoption, willfully, substantially

 and continuously neglected to provide him with necessary care and protection[.]”

 It is well established that “abandonment” and “neglect” as used in section 453.040 are used

in the disjunctive; thus, either ground, if supported by substantial evidence, will obviate the need

for parental consent to an adoption. See S.J.S., 134 S.W.3d. at 677. See also Section 453.040(7);

In re C.W., 753 S.W.2d 933 (Mo. App. E.D. 1988); C.B.L., 937 S.W.2d at 734; In re K.L.C., 9

S.W.3d 768, 772 (Mo. App. S.D. 2000); In re J.M.J., 404 S.W.3d 423, 432; I.D. v. B.C.D. (App.

S.D. 2000) 12 S.W.3d 375 (citing In Re Marriage of A.S.A., 931 S.W.2d 218, 221 (Mo. App. S.D.

1996).

 6
 A. Burden of Proof: Clear, Cogent, and Convincing Evidence.

 Abandonment and neglect must be established by clear, cogent, and convincing evidence

that “instantly tilt[s] the scales in the affirmative when weighed against the evidence in

opposition,” and the fact finder’s mind must be left with “an abiding conviction that the evidence

is true.” T.S.D., 419 S.W.3d at 895 (citing W.B.L., 681 S.W.2d at 454). And the burden is on

those seeking to terminate the parent-child relationship. Id.; F.L.M., 561 S.W.3d at 479. While

reference to other abandonment and neglect cases may provide some helpful guidance, the very

nature of these proceedings is such that each case must turn on its own unique set of facts. Id. at

891 (citing A.L.H., 906 S.W.2d at 376.); see also A.S.A., 931 S.W.2d at 221 (citing H.W.S., 827

S.W.2d at 221).

 The potential factors to be considered in an adoption proceeding are “legion” such that it

is impossible to catalogue all that may be involved or to assign a degree of weight to specific

favorable and unfavorable factors, much less identify any single factor as absolute. In Interest of

L.W.F., 818 S.W.2d 727, 734 (Mo. App. S.D. 1991) (citing In Interest of J.L.H., 647 S.W.2d 852

(Mo. App. W.D. 1983)). However, every inquiry should be guided by the paramount consideration

of every adoption proceeding: the best interest of the child. Id. (citing State ex rel. Catholic Char.

of St. Louis v. Hoester, 494 S.W.2d 70, 74 (Mo. banc 1973)); see also A.S.A., 931 S.W.2d at 221.

 Abandonment and neglect, for the purposes of determining when a natural parent's consent

is not needed for an adoption, are different but not mutually exclusive concepts. C.B.L., 937

S.W.2d at 737. See also G.S.M. v. T.H.B., 786 S.W.2d 898, 900 (Mo. App. E.D. 1990); A.L.H.,

906 S.W.2d at 375; A.S.A, 931 S.W.2d at 221-22; J.M.J., 404 S.W.3d at 432. Abandonment has

been defined as the voluntary and intentional relinquishment of custody of the child to another

with the intent to never again claim the rights of a parent or perform the duties of a parent. In the

 7
Matter of A.R.V. and D.M.V., 561 S.W.3d 817, 826 (Mo. App. E.D. 2018). It has also been defined

as the intentional withholding by the parent of his or her care, love, affection, protection, and

presence, without just cause or excuse. Id. See also J.M.J., 404 S.W.3d at 432 (citing K.L.C., 9

S.W.3d at 773); T.S.D., 419 S.W.3d at 895; H.W.S., 827 S.W.2d at 239–40; In re C.M.B. 55 S.W.3d

889, 894 (Mo. App. S.D. 2001); E.K.L. v. A.L.B., 488 S.W.3d 764, 779 (Mo. App. W.D. 2016).

 Neglect, on the other hand, focuses on physical deprivation or harm, and requires a finding

that the parent intended to forego the parental duties of providing ‘care and protection’ including

both the obligation to provide financial support for a minor child, as well as the obligation to

maintain meaningful contact with the child. Id. (citing J.M.J., 404 S.W.3d at 432). See also

Section 453.040(7); F.L.M., 561 S.W.3d at 479 (citing S.S.S., 529 S.W.3d at 818).

 Thus, the determination as to whether abandonment or neglect has occurred requires an

examination of the parent’s intent. T.S.D., 419 S.W.3d at 895 (citing W.B.L., 681 S.W.2d at 454.)

The parent’s intent, an inferred fact, is determined by considering all of the evidence of the parent’s

conduct before, during, and after the statutory period. Id. However, the greatest weight is given

to conduct during the statutory period and the least weight to conduct occurring after the petition

for termination is filed. Id.

 B. Abandonment.

 The record here is replete with evidence that Father abandoned M.N.V. within the meaning

of section 453.040. Father argues that because he was incarcerated both before and during the

relevant statutory period, there is no evidence he intended to abandon M.N.V. However, while

imprisonment alone does not constitute abandonment, it also does not preclude a finding of

abandonment. See H.W.S., 827 S.W.2d at 241 (quoting In the Interest of A.R.M., 750 S.W.2d 86,

89 (Mo. banc. 1988)). See also Interest of R.D.M, 576 S.W.3d 318, 323 (Mo. App. E.D. 2019)

 8
(“Incarcerated parents retain their obligation to provide support for their children and communicate

with them.”); Interest of S.R.H., 589 S.W.3d 62, 71 (Mo. App. E.D. 2013); E.K.L., 488 S.W.3d at

779).

 Missouri courts have recognized a number of potential considerations for determining

whether a parent’s behavior constitutes abandonment. See T.S.D., 419 S.W.3d at 896 (The Court

considered: the time the child had been in the care of the adoptive parents; mother’s infrequent

visits; mother’s periodic and irregular telephone contact; mother’s lack of contact for extended

periods of time; mother’s failure to make contact at all during the six months prior to the filing of

the petition for adoption; mother’s periodic and infrequent gifts and minimal monetary support;

and the child’s lack of emotional ties to the biological parent); see also S.S.S., 529 S.W.3d at 816

(The Court considered: father’s lack of interest in the minor child despite opportunities to visit;

the child’s lack of emotional ties with father; father’s continuous lack of commitment to the child

and failure to make the child a priority; and father’s failure to pay costs of care and maintenance

of the child despite his ability to do so.)

 Here, the record shows that Father has been in and out of incarceration for drug-related

offenses for most of M.N.V.’s life, and that during both his periods of freedom and of incarceration

he made few efforts to contact her or to improve his circumstances so as to be able to take an active

role in her life. Father has relied on his niece to raise his daughter since she was two weeks old.

Father has not visited M.N.V., nor made any attempts at regular contact, and showed little to no

interest in being involved in M.N.V.’s life until the Winters filed their petition. See C.M.B.R., 332

S.W.3d at 819; see also I.D., 12 S.W.3d at 377.

 Father argues that he was “stifled” in his efforts to maintain a relationship with M.N.V. by

Ms. Winters, but he has failed to present any evidence supporting his assertion such as that Ms.

 9
Winters changed her phone number, address, or other contact information at any time while

M.N.V. was in her care and custody. Furthermore, even if Ms. Winters had stifled Father’s

attempts at a relationship with M.N.V. as he claims, it would be irrelevant to the question of

whether Father abandoned M.N.V. A.R.M., 750 S.W.2d at 90 (stating that even if prospective

adoptive parent had prevented child's contact with father or with father's family, that issue would

be irrelevant to the question of father's abandonment of the minor child.) See also In Interest of

P.W.K., 815 S.W.2d 95, 96 (Mo. App. E.D. 1991); In re A.B.M., 17 S.W.3d 912, 916 (Mo. App.

S.D. 2000); C.W., 753 S.W.2d at 940.

 When considering the record here in conjunction with what Missouri courts have

historically considered important factors in an abandonment inquiry, perhaps most significant is

the glaring difference in M.N.V.’s relationships with Father and with the Winters. M.N.V. has no

emotional ties to Father and does not know who he is or have any recognizable relationship with

him, while she has closely bonded with the Winters. In re Z.L.R., 347 S.W.3d 601, 610 (Mo. App.

S.D. 2011) (holding that termination of parental rights was in child’s best interest where the

evidence showed that child had never met her father, did not know who he was, and had closely

bonded with her foster parents); G.S.M, 786 S.W.2d at 903-04 (“[A] finding that petitioners would

provide a good home for the child does not end the matter. Other factors a court must consider are

[…] the child's emotional ties to and interaction with the parties [and] filial ties with the

noncustodial parent.”) See also S.S.S., 529 S.W.3d at 816-17; In re J.M.W., 360 S.W.3d 887, 893

(Mo. App. E.D. 2012); In Interest of J.N.C., 913 S.W.2d 376, 381 (Mo. App. W.D. 1996).

 10
 In contrast, M.N.V. has a very close, familial relationship with the Winters. She has lived

with Ms. Winters all her life and believes that Ms. Winters is in fact her mother.6 Mr. Winters is

the only father figure M.N.V. has ever known, and she considers his son her brother. See In re

M.F., 1 S.W.3d 524, 533 (Mo. App. W.D. 1999) (“The degree of bonding between the custodial

[family] and the child is a significant factor in determining whether finalization of the adoption is

in the child's best interests.”)

 Accordingly, we find substantial and competent evidence to support the court’s

determination that Father abandoned M.N.V.

 C. Neglect.

 Although we may affirm the court’s judgment on the well-supported finding of

abandonment alone, the court’s finding of neglect is also supported by the record. Father neglected

M.N.V. by failing to fulfill his parental duties of providing care and protection imposed on him by

both law and conscience. See F.L.M., 561 S.W.3d at 479. Providing care and protection requires

a parent to provide for the child’s health, welfare, and maintenance; and it suggests having concern

for, interest in, and attachment to the child. A.R.V., 561 S.W.3d 817, 826. A non-custodial parent's

failure to contribute to the financial support of their children, combined with other evidence of

lack of contact, is sufficient to sustain a finding of willful neglect in failing to provide proper care

and maintenance, even in situations such as this one where the non-custodial parent is incarcerated.

A.S.A., 931 S.W.2d 218, 221 (Mo. App. S.D. 1996) (citing S.C.H. v. C.W.H., 587 S.W.2d 945, 948

(Mo. App. E.D. 1979)). See also S.R.H., 589 S.W.3d at 71 (“We acknowledge that an incarcerated

parent’s contribution will not significantly assist in providing the parent’s child with essentials,

6
 Nothing on the record indicates that M.N.V. has ever met or has any kind of relationship with
her biological mother.

 11
but instead, it shows the parent’s intent to continue the parent-child relationship.”); E.K.L., 488

S.W.3d at 779 (“[F]inancial contributions, no matter how minimal, demonstrate a parent's intent

to continue the parent-child relationship. […] Evidence of this intent is lacking when the parent

fails to make any contribution, no matter how small the amount.”)

 Ms. Winters has been M.N.V.’s primary caretaker since she was eight months old. Father

has not seen or spoken to M.N.V since early 2018, when he entered his most recent period of

incarceration in the Missouri Department of Corrections. The undisputed evidence shows that

Father has not supported M.N.V. since she was removed from his care in 2013 and that his only

attempt to support her financially was a single twenty-five-dollar gift card. Father has also failed

to provide necessities involved in raising M.N.V such as diapers, food, and clothing; instead he

relied on the Winters to fulfill those duties for him. Furthermore, Father made no genuine attempts,

beyond sending one Christmas card, to contact M.N.V. nor has he sought to maintain a relationship

with her. This conduct demonstrates a general lack of intent or interest in performing the duties

of a parent, as well as a lack of concern for and attachment to M.N.V.

 After reviewing the record, we find there is substantial and competent evidence to support

the court’s determination that Father neglected M.N.V. within the meaning of section 453.040(7)

during, and long before, the six months preceding the filing of the adoption petition.

2. The court’s determination that the adoption and termination of Father’s parental

 rights were in M.N.V.’s best interest is supported by substantial and competent

 evidence.

 Father argues that the court’s judgment is deficient because it failed to explain why it was

in M.N.V.’s best interest that his parental rights be terminated and the adoption granted. We

disagree.

 12
 In its judgment, the court stated that “[i]t is in the best interest of Minor Child and it is fit

and proper that the adoption of Minor Child by Petitioners should be made.” This statement is all

that is required to support the court’s best interest determination. Section 453.080 does not require

the court state the specific reasons for its determination that the parental rights' termination and

adoption are in the child’s best interest, or to recite a specific finding regarding the applicability

of the statutory exception to parental consent. C.W., 753 S.W.2d at 937-38. Furthermore, the

record reveals no request by Father for specific findings, and such findings and conclusions are

not required of the court unless requested. Id.; see also E.K.L., 488 S.W.3d at 764.

 The court's determination here of what was in M.N.V.'s best interest was an ultimate

conclusion based on the totality of the evidence presented and the court’s assessment of that

evidence. See In re K.K.J., 984 S.W.2d 548, 553-54 (Mo. App. S.D. 1999). It was not required to

provide an itemized list of factors on which it relied. Id. And there is nothing on the record that

leaves this Court with the firm belief the court’s determination that the adoption was in M.N.V.’s

best interest was not supported by substantial and competent evidence. In fact, the record before

us establishes overwhelmingly that the adoption and termination were in M.N.V.’s best interest in

light of Father's demonstrated abandonment and neglect, and the readiness and willingness of

Crystal Winters and Everette Winters to continue to care for and raise M.N.V. as they have done

for many years.

3. The trial court did not err in its application of the adoption statute by approving

 Crystal Winters' adoption of M.N.V.

 Crystal Winters readily satisfied the custody requirements of section 453.080 which

provides in pertinent part:

 13
 1. The court shall conduct a hearing to determine whether the adoption shall be

 finalized. During such hearing, the court shall ascertain whether:

 (1) The person sought to be adopted, if a child, has been in the lawful and

 actual custody of the petitioner for a period of at least six months prior to

 entry of the adoption decree. “Lawful and actual custody” shall include a

 transfer of custody pursuant to the laws of this state, another state, a territory

 of the United States, or another country.

 As M.N.V.’s long-time primary caregiver and her court-appointed guardian, Crystal

Winters had actual, lawful, and legal custody of M.N.V. beginning at least in 2014. Moreover, the

record here demonstrates that the best interest and welfare of M.N.V., which is the primary and

paramount consideration in an adoption proceeding, is fully served by Crystal Winters' adoption

of M.N.V. G.S.M. v. T.H.B., 786 S.W.2d 898, 903 (Mo. App. E.D. 1990). Consequently, we find

the record supports the court's judgment approving Crystal Winters' adoption of M.N.V.

4. Everette Winters' adoption petition.

 Our affirmance of Everette Winters' adoption of M.N.V. is not as straightforward as Crystal

Winters' because we must hurdle the "lawful" custody requirement of section 453.080 without the

benefit of the 2014 guardianship appointment which buttressed Crystal Winters' petition.7 Thus,

the issue is whether Everette Winters, as the spouse of M.N.V.'s court-appointed guardian since

7
 Section 453.080 does not mandate that lawful custody can only be established by a court-
ordered transfer or grant of custody. In re S.J.S., 134 S.W.3d 673, 677 (Mo. App. E.D. 2004).
The word “include” as used in section 453.080 is not a word of limitation, as Father suggests, but
one of enlargement. Id. When used in conjunction with a number of specified objects, it implies
that there may be others that are not mentioned. Id.

 14
2015, should be deemed to have had the lawful custody of M.N.V. for purposes of section 453.080

without any other formal court-ordered transfer of custody.8 We conclude that he should.

 We find Everette Winters' circumstance following his marriage to Crystal Winters to be

closely analogous to that of a stepparent in the adoption context.9 In Missouri, stepparents are

deemed to have lawful custody within the definition of the statute without a court order granting

or transferring custody to them specifically. See In re S.J.S., 134 S.W.3d 673, 677 (Mo. App. E.D.

2004) (holding that the trial court had jurisdiction to hear adoption petition filed by ex-wife's

current husband, the child's stepfather, since child was in the lawful and actual custody of

stepfather for more than six months); In re Adoption of P.J.K., 359 S.W.2d 360 (Mo. App. S.D.)

(holding that stepfather's custody of child after marriage to mother was lawful and actual, entitling

him to adopt, although mother had been given custody by divorce decree and there was no court

order transferring custody to stepfather). See also State ex rel. Dorsey v. Kelly, 327 S.W.2d 160

(Mo. banc 1959); S.S.S., 529 S.W.3d at 811; G.S.M. v. T.H.B., 786 S.W.2d 898 (Mo. App. E.D.

1990); A.L.H., 906 S.W.2d at 373; C.B.L. v. K.E.L, 937 S.W.2d 734 (Mo. App. E.D. 1996); In re

Adoption of Siler, 225 S.W.2d 379 (Mo. App. S.D. 1949); In re Adoption of Baby Boy W., 701

S.W.2d 534 (Mo. App. W.D. 1985) (declined to follow on other grounds by In re Baby Girl ---,

850 S.W.2d 64 (Mo. banc 1993)).

 We see no reason to treat Everette Winters' custody different because his spouse is the

court-appointed guardian as opposed to the child's parent. From a purely legal perspective, the

roles, rights, and responsibilities of guardians and parents are similar. Section 475.010(8) defines

a guardian as "one appointed by a court to have the care and custody of the person of a minor."

8
 We are unaware of any Missouri case on point in this specific factual context.
9
 Section 453.015(5) defines “stepparent” as “the spouse of a biological or adoptive parent.”

 15
And section 475.025 deems parents to be the natural guardians of a child. The powers of a guardian

may be limited or terminated like those of a parent. Therefore, we conclude that the record here

supports the conclusion that M.N.V. was in the lawful and actual custody of Everette Winters for

at least six months prior to the entry of the adoption decree.

 Moreover, the record readily supports the conclusion that M.N.V.'s best interest and

welfare as well as her entitlement to a permanent and stable home are all well-served through her

adoption by Everette Winters.

 Conclusion

 For these reasons, we affirm the judgment (1) terminating the parental rights of Matthew

W. Vanness in M.N.V. and (2) approving the adoption of M.N.V. by Crystal and Everette

Winters.

 _____________________________
 James M. Dowd, Judge

Angela T. Quigless, P.J. and
Kurt S. Odenwald, J. concur.

 16