**In the Interest of R.M., D.C.T. and T.D.T.**

**No. ED 88915.**

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 25, 2007.

Gregory F. Quinn, Manchester, MO, for appellant.

John Dennis Rayfield, Crystal City, MO, Stephen Dwight Bouchard, co-counsel, Hillsboro, MO, for respondent.

Derrick R. Good, Hillsboro, Guardian Ad Litem.

BOOKER T. SHAW, Judge.

## I. Introduction

Respondents K.S. (Mother) and N.S. (Stepfather) filed a petition for adoption of R.M. (Child) by Stepfather. Appellant J.M. is Child's biological father (Father). Appellant L.L. is Father's mother, i.e., Child's paternal grandmother (Grandmother). Father and Grandmother appeal from the trial court's judgment terminating Father's parental rights to Child and overruling Grandmother's motion seeking visitation with Child. Father raises three points of appeal arguing that the trial court erred in terminating his parental rights because the record lacks clear, cogent, and convincing evidence of willful neglect required for termination pursuant

to section 453.040(7) RSMo (2005).[1] Grandmother's sole point of appeal argues that the trial court erred in overruling her motion because the court's finding that Grandmother had not been denied visitation was against the weight of the evidence. We reverse and remand.

## II. Facts and Procedural History

Viewing the facts and reasonable inferences in the light most favorable to the trial court's decision and deferring to the trial court's ability to determine the credibility of witnesses (*In the Interest of K.O.*, 933 S.W.2d 930, 934 (Mo.App. E.D.1996)), the facts are as follows.

Child was born in March 2000. Mother and Father married in November 2001. They lived together as a family from Child's birth until the couple separated in April 2003. Father then went to live with Grandmother and continued to see Child during weekly visits until roughly May 2005, when the couple divorced. Thereafter, Child's visits with Grandmother were reduced, and Father's contact with Child was limited. Mother married Stepfather in October 2005, and they filed the petition for adoption in January 2006. Hearings were held in July, and the judgment was entered in September 2006. Child is now seven years old.

The divorce decree was entered by default. Father failed to appear for fear of being arrested on outstanding traffic warrants. Father was ordered to pay $100 per month in child support but paid nothing until 2006, prior to trial, when he paid the arrears in a lump sum. The court found that Father failed to provide any other meaningful support.

During the six months prior to the petition, Father visited with Child once in Mother's presence. Mother and Father spoke numerous times and met twice. Father asked to see Child during one of those meetings, but no visit occurred. During the year or so before trial, Father called Mother and asked to speak to Child on a few occasions and was able to speak to Child a couple of times. He also had occasional visits with Child at Grandmother's house.

After Respondents filed their adoption petition, Mother asked Grandmother to prevent Father from seeing Child at Grandmother's house. When Grandmother refused, Mother ceased visits at Grandmother's. Mother refused to allow Father to speak with Child on at least one occasion, and, during another call, Father said, "any time I try to call [Child] I can't ever see him."

Grandmother cared for Child for significant periods during the first four years of his life (e.g., four days per week from ages one to three) and continued to enjoy weekly overnight visits with Child through the spring of 2005, at which time the parents divorced and Mother reduced visits to weekly dinners. The families' relationships deteriorated, and an argument ensued after a visit in August 2005. Mother denies saying that Grandmother would need a lawyer in order to see Child again but acknowledges that Grandmother gave Child a family photo album to take home that day. Grandmother visited Child at school later that month. Mother then instructed the school to deny Grandmother future access. Mother left a phone message for Grandmother that September after Grandmother attempted to visit Child at school; Mother testified that she did not recall the substance of her message. Grandmother left several angry messages for Mother about two weeks later. Grandmother filed her motion November 17 and

---

1. All references are to RSMo 2005.

called Mother December 5 to request a visit, which Mother granted.

After hearing the evidence, the trial court terminated Father's parental rights based on findings that Father had failed to provide support for Child and that his efforts to maintain contact with Child were merely token and thus insufficient to overcome a finding of willful neglect. The court overruled Grandmother's motion seeking visitation based on a finding that Grandmother failed to establish that she was directly denied visitation.

## III. Analysis

*Termination for Neglect (Points I–III)*

■ Appellate review of a trial court's decision to terminate parental rights is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the trial court unless no substantial evidence supports the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

■ In a stepparent adoption, consent of the natural parent or involuntary termination of parental rights is not required from "a parent who has for a period of at least six months, for a child one year of age or older, . . . willfully abandoned the child, or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection." Section 453.040(7). "The termination of parental rights is one of the most serious acts that a court can undertake." *C.B.L. v. K.E.L.*, 937 S.W.2d 734, 737 (Mo.App. E.D.1996). As such, "adoption statutes are strictly construed in favor of natural parents." *Id.*

■ Respondents rely on *G.S.M. & L.M.M. v. T.H.B.*, 786 S.W.2d 898 (Mo.

App. E.D.1990), where this Court held that petitioners may establish willful neglect by showing that the natural parent had duty to pay child support and failed to do so. However, in *C.B.L.*, we clarified that failure to provide support alone does not warrant termination. With the extreme penalty imposed upon the natural parent, the level of parental indifference necessary for termination for willful neglect is comparable to the standard for abandonment. *Id.* The issue turns on intent, which generally is an inferred fact, determined by conduct within the statutory period, combined with relevant conduct both before and after this period. *Id.* Proof of intent must be shown by clear, cogent and convincing evidence, i.e., that which instantly tilts the scales in the affirmative when weighed against opposing evidence. *Id.* To support findings of willful neglect, a parent's failure to contribute to the financial support of his children must be coupled with evidence of a lack of contact with them. *Id.*

In terminating Father's parental rights, the trial court relied primarily on its findings that Father failed to provide support for Child and failed to maintain sufficient contact with Child. Father's three points of appeal challenge various factual bases for the trial court's judgment and can be examined together. Father argues that the trial court's judgment is against the weight of the evidence because: (1) he visited his son during the statutory period and sought additional contact; (2) Mother restricted his access to Child; (3) he has filial ties with Child; and (4) his conduct before and after the statutory period disproves the intent necessary for willful neglect. With respect to the latter, Father cites his frequent visits with Child at Grandmother's house prior to the spring of 2005 and his parental access motion, motion to modify, and payment of child support arrears in 2006. Father claims he

was unaware of the support order because Mother agreed not to seek support and Father did not read the dissolution decree. Father also claims he made multiple requests to see or speak to Child during the statutory period, but Mother never obliged. Instead, she used Child as bait to secure Father's cooperation in a personal injury lawsuit.

The trial court questioned Father's credibility and disregarded his testimony, but the record undermines the court's wholesale reliance on Mother's testimony. For example, Mother testified that she spoke with Father two or three times during the fall of 2005, but phone records show fifty-nine calls between them, some lasting several minutes. The guardian *ad litem* (GAL), after extensive interviews with all parties, testified that, "I don't think anybody has sat up here and told 100% the truth." During Father's testimony about Mother's agreement not to seek child support in the divorce, in response to counsel's objection, the GAL encouraged the judge to allow the testimony about what the GAL described as "a pattern of deception [by Mother] that has taken place to cause some of these issues."

We are further perplexed by the trial court's characterization of selected details. The court inexplicably ridicules Father's testimony that Child is "his little buddy." The court found that Father had serious issues with drug and alcohol abuse, but the record contains no evidence other than Mother's bare allegation referring to 2003. The court criticizes Father's lack of a driver's license or permanent address without articulating how those circumstances support a finding of willful neglect.

Even accepting the trial court's findings of fact and assessment of credibility, Mother's testimony alone establishes that Father saw Child at least once and spoke with him by phone during the statutory period and that Mother actively sought to limit contact in view of the adoption. *C.B.L.* only condones a finding of willful neglect when non-support is coupled with a complete lack of contact. Mother's testimony that Child referred to Father as "his dad," along with photos in evidence documenting their interaction, establish the existence of filial ties. By contrast, in *G.S.M.* we noted the absence of any filial ties between the child and the natural father. In *C.B.L.* and in the present case, the non-custodial parent had contact with the child since birth, the custodial parent never sought enforcement of the support order, and the child was always fully cared for.

Most notably in this case, the GAL did not recommend that termination of Father's parental rights was in Child's best interest. On the contrary, he testified that Child should continue to "know who his dad is" and that Child's best interests would be served by a continuing relationship with Father's family, particularly the grandparents.

Overall, the record does not provide the clear, cogent and convincing evidence required to instantly tilt the scales in the affirmative when weighed against opposing evidence, nor does it demonstrate the level of parental indifference necessary to warrant the extreme penalty of termination. Points I through III are granted.

*Grandparent Visitation (Point IV)*

Grandparents have the right to file a motion to modify a dissolution decree to seek visitation rights when visitation has been denied to them. Section 452.402.1(1). The trial court then determines if visitation would be in the child's best interest. Section 452.402.2.

In her sole point of appeal, Grandmother argues that the trial court erred in overruling her motion to modify the parents'

dissolution decree in order to secure visitation rights because the court's finding that Grandmother had not been denied visitation was against the weight of the evidence. Grandmother alleges that, following an argument in August 2005, Mother threatened that Grandmother would have to hire a lawyer in order to see Child again. Mother denies this statement but admits that Grandmother gave Child a family photo album to take home that day. Grandmother further claims to have made frequent attempts to obtain visitation prior to filing her motion in November 2005. The court disregarded Grandmother's testimony, finding her not credible partly due to inaccuracies in her affidavit for publication. The court accepted the truth of Mother's testimony despite similar discrepancies in her own affidavit.[2] It is undisputed that Mother instructed the school to deny Grandmother access to Child in September 2005, and Mother and Grandmother exchanged phone calls thereafter. The trial court does not discuss these facts but implies that they are insufficient to constitute a denial. Instead, the court offers a lengthy assault on Grandmother's character that was unnecessary to the ruling and unsupported by the record.[3]

It is unclear whether the basis for the court's ruling was procedural or substantive. Although it does not expressly frame the issue as such, the court means to dismiss the motion for lack of subject matter jurisdiction (i.e., no denial thus no right to file motion to modify), but the judgment addresses the merits of the motion [4] and expressly overrules it. We will consider both possible interpretations.

▮▮▮ This Court reviews a decision to dismiss for lack of subject matter jurisdiction pursuant to an abuse of discretion standard. *In re J.M.Z.*, 983 S.W.2d 573, 574 (Mo.App. E.D.1998). Dismissal for lack of subject matter jurisdiction is proper when it appears, by a preponderance of the evidence, that the court is without jurisdiction. *Id.* Under this standard, even accepting the court's disregard for Grandmother's version of the facts, the record does not supply a preponderance of evidence that the court lacked jurisdiction. While we caution grandparents from seeking judicial recourse prematurely, we reject the trial court's suggestion that the statute requires documentation of requests or denials. The record contains ample evidence, based on undisputed actions of the parties and Mother's own testimony, that Mother's objective was to insulate

2. Namely, Grandmother and Mother each stated in their respective affidavits for publication that they did not know how to contact Father for purposes of service of process, when, in fact, each had seen or spoken to Father during the period in question.

3. The court describes Grandmother as "impulsive, overbearing, presumptuous, and hysterical" for "assuming responsibility and authority generally exercised by parents without the consent of the Petitioner." As one example, the court accuses Grandmother of unilaterally causing Child to undergo vaccinations, when, in fact, Mother signed a medical authorization form so that Grandmother could take Child to doctor appointments. The court further characterizes Grandmother as prone

to "mood swings" without reference to any particular incident. The court's disdain might also be inferred from its decision to assess over three-quarters of the GAL fees to Grandmother, though neither she nor Father is related to the other two children being adopted in the companion case. While this latter aspect was not properly preserved for appellate review, the trial court has discretion to revisit the assessment on remand.

4. "It is clearly in [Child]'s best interest ... that said visitation be regulated by [Mother]. It is impossible for a Court to establish any kind of visitation schedule that would accommodate [Grandmother's behavior] and yet assure [Child]'s emotional well-being."

Child from Father and Grandmother during the months prior to the adoption petition, and any attempts to obtain visits were, or would have been, futile. The trial court's finding that Grandmother was not denied visitation was against the weight of the evidence. As such, the court's refusal of jurisdiction was an abuse of discretion.

■ Alternatively, reviewing the judgment as a decision on the merits, the trial court's judgment is against the weight of the evidence that grandparent visitation is in Child's best interest. Mother's own testimony confirms that Grandmother has been a trusted caregiver and an important figure in Child's life, and the GAL testified that Child's "grandparents have been instrumental in his life ... [H]e needs to have a continuing relationship with his grandparents." Point IV is granted.

## IV. Conclusion

The trial court's findings of fact do not comport with the full record and therefore are against the weight of the evidence. We reverse the trial court's judgment terminating Father's parental rights and remand for dismissal of the adoption petition as to Child and review of Father's motion to modify for visitation in accordance with section 452.400.2(1). We reverse the trial court's judgment with respect to Grandmother's motion to modify and remand for resolution consistent with this opinion.

LAWRENCE E. MOONEY, P.J., and NANNETTE A. BAKER, concur.