LAWRENCE E. MOONEY, JUDGE
*476 The father, M.S.F., appeals the judgment entered by the Circuit Court of the City of St. Louis terminating his parental rights to his six-year-old child, F.L.M., and later granting the petition of the guardians, K.F. and L.F., to adopt the child.[1] We find that the record contains no clear, cogent, and convincing evidence to support the trial court's determination that the father willfully, substantially, and continuously neglected to provide the child with necessary care and protection. We reverse and remand with instructions.
Factual and Procedural Background
The child was born in May 2012 to the father and A.R.M., the mother.[2] The parents never married. L.F. and the father testified that the father cared for the child when she was a newborn, and the father stated that he worked and provided for her as well. The father was incarcerated when the child was three months old on charges of assaulting a law-enforcement officer, driving while intoxicated, and leaving the scene of an accident in the summer of 2012. The father ultimately pleaded guilty, and remained imprisoned at the time of trial.
The child and an older sibling entered protective custody in April 2014 based on allegations of abuse and neglect against the mother. The Children's Division initially placed the child in foster care with non-relatives, and then in June 2014 placed her in foster care with K.F., the child's paternal great-uncle, and his then fiancee and now wife, L.F. The father and mother consented to K.F. and L.F. later assuming guardianship of the child, and the probate division of the Circuit Court of Jefferson County issued letters of guardianship to K.F. and L.F. in early November 2015. The juvenile division of the Circuit Court of Jefferson County terminated its jurisdiction in the underlying care and protection case after K.F. and L.F. became the child's legal guardians. In July 2016 in the Circuit Court of the City of St. Louis, K.F. and L.F. petitioned to terminate the parental rights of the biological parents and to adopt the child. Neither parent sought termination of the guardianship. The Circuit Court of the City of St. Louis conducted a trial to address the termination of parental rights over the course of two days *477 in May and June 2017. The father testified that he consented to K.F. and L.F. as guardians for the child and wished for her to remain in their care until his release from prison because he knew the child would be in a safe and stable home.
The father regularly wrote the child letters, sent her cards and drawings, and telephoned her. Twice the guardians took the child to visit the father, and twice the paternal grandmother took the child to visit. L.F. testified that the child knows who the father is, calls him "Daddy [M.]," and asks when he will call her. The father documented his completion of numerous courses in prison, including courses for substance-abuse treatment, first aid, parenting, communication, and anger management. He explained that he participated in programs in prison when and where available to help him connect with the child, specifically Project Angel Tree and Story Link.[3] The trial court concluded that the father loves the child.
The father paid no child support. He testified that he has $8.50 per month to live on in prison, and "make[s] sacrifices just to make phone time and call and talk to my daughter." Father stated that he expected to be released from prison in April 2018; that he was considering options for housing upon release; that he expected to return to his former landscaping job; and that he wanted to reintegrate into the child's life, and help her transition from living with K.F. and L.F. to living with him. The father testified that he inquired of the guardians about the child's health, well-being, and education, but received no information.
The trial court made no finding regarding the father's credibility although it found the guardians "less than forthcoming when questioned about [m]other's attempts to contact them." The court, while observing that they had no legal obligation to do so, also found "that the guardians failed to provide a constant and regular schedule or method of visitation and contact between the natural parents and the child." Nonetheless, the trial court determined that the father willfully neglected the minor child, having noted that the father "never provided any monetary support" and "lacks adequate housing in which to assume [the child's] custody any time in the near future." Further, "[i]n reviewing the evidence submitted and considering the testimony elicited from the witnesses at trial," the court found "that it is in the minor child's best interest that the parental rights of the natural parents be terminated so that the minor child can be adopted by her present caregivers, [K.F.] and [L.F.]." The trial court did not elaborate further on its best-interest analysis. The father appeals.
Standard of Review
We review a trial court's decision to terminate parental rights under the standard set forth in Murphy v. Carron .[4] In re R.M., 234 S.W.3d 619,622 (Mo. App. E.D. 2007). We will affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We review whether clear, cogent, and convincing evidence supports a finding that parental consent is not necessary for the adoption of a child pursuant to *478 section 453.040 RSMo. (2016)[5] S.S.S. v. C.V.S., 529 S.W.3d 811, 815 (Mo. banc 2017). Clear, cogent, and convincing evidence instantly tilts the scales in the affirmative when weighed against opposing evidence. R.M., 234 S.W.3d at 622.
Discussion
On appeal, the father claims the trial court erred in terminating his parental rights and granting the adoption of F.L.M. because the court's decision is contrary to the law, is not supported by substantial evidence, and is against the weight of the evidence. Specifically, the father argues that the record fails to support a finding that he willfully, substantially, and continuously neglected to provide the child with the necessary care and protection.
The United States Supreme Court has long recognized that the relationship between parent and child is constitutionally protected. Stanley v. Illinois , 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). This relationship is a fundamental right and liberty interest, entitled to protection under the Due Process Clause of the Fourteenth Amendment. Troxel v. Granville , 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The interest of parents in the care, custody, and control of their children is perhaps the oldest fundamental liberty interest recognized by the United States Supreme Court. Id. Termination of parental rights is among the most serious acts that a court can undertake. R.M. , 234 S.W.3d at 622. Therefore, we strictly construe adoption statutes in favor of natural parents. Id.
Before a court can grant an adoption under Chapter 453, the parents must either give their consent to the adoption, or have their parental rights involuntarily terminated. In re J.M.J. , 404 S.W.3d 423, 429 (Mo. App. W.D. 2013) (abrogated on other grounds by S.S.S. , 529 S.W.3d at 816 n.3 ). "The quality of the adoptive home is not a part of the termination inquiry; rather, the focus is on the natural parent's interactions and relationship with the child." In re C.M.B.R. , 332 S.W.3d 793, 822 (Mo. banc 2011) (abrogated on other grounds by S.S.S. , 529 S.W.3d at 816 n.3 ). The trial court must first consider the question of termination of parental rights in contested Chapter 453 adoption cases in order to avoid confusing the quality of the adoptive home with the grounds for terminating parental rights. Id.
Here, the child's guardians, her paternal great-uncle K.F. and her great-aunt L.F., filed this action for termination of parental rights and adoption. K.F. and L.F. alleged neglect while tracking the language of section 453.040(7) so that consent of the child's parents to her adoption would not be required under the statute. Section 453.040 provides in relevant part:
The consent to the adoption of a child is not required of:
* * *
(7) A parent who has ... for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide [the child] with necessary care and protection[.]
The burden rested on K.F. and L.F. to prove by clear, cogent, and convincing evidence that the father willfully, substantially, and continuously neglected to provide the child with necessary care and protection for at least six months before the guardians filed their adoption petition.[6]
*479 The statute expressly refers to "neglect" as failing to provide a child with "necessary care and protection." Section 453.040(7). Providing care and protection requires a parent to provide for the health, welfare, maintenance, and protection of a child, and it also suggests having a concern, interest, and attachment to the child. S.S.S., 529 S.W.3d at 818. Neglect focuses on physical deprivation or harm, and is characterized as a failure to perform the duty that the law and conscience impose on a parent. In re T.S.D., 419 S.W.3d 887, 895 (Mo. App. E.D. 2014). " 'Neglect' is ultimately a question of an intent to forego 'parental duties,' which includes both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with the child." S.S.S., 529 S.W.3d at 818 (quoting J.M.J, 404 S.W.3d at 432 ); T.S.D., 419 S.W.3d at 895. Furthermore, section 453.040(7) requires willful neglect, meaning neglect that is intentional, deliberate, and without just cause or excuse, and that evinces a settled purpose to forego parental duties. C.B.L. v. K.E.L. , 937 S.W.2d 734, 737 (Mo. App. E.D. 1996).
Failure to provide financial support, by itself, does not warrant termination of parental rights. R.M. , 234 S.W.3d at 622. Given the extreme penalty imposed on the parent, the level of parental indifference necessary for termination based on willful neglect is comparable to that required to find abandonment. Id. The issue of neglect turns on intent, which generally the court infers from the parent's conduct within the statutory period, combined with relevant conduct both before and after. Id. Neglect must be established by clear, cogent, and convincing evidence that instantly tilts the scales in the affirmative when weighed against the opposing evidence. T.S.D. , 419 S.W.3d at 895. To support a finding of willful neglect, a parent's failure to contribute to the financial support of his child must be coupled with evidence of a lack of contact. R.M. , 234 S.W.3d at 622.
At the time of trial in 2017, the father had been incarcerated since August 2012-when the child was three months old-as a result of convictions for assault of a law-enforcement officer, driving while intoxicated, and leaving the scene of an accident. The trial court found that the father had willfully neglected the minor child. The trial court identified two factors to support its finding: (1) the father's failure to provide financial support for the child, and (2) the father's inability to provide the child with a stable home as a result of his incarceration for most of the child's life. The trial court opined that the biological parents "believed that this child would remain in a 'forever' guardianship, if and until either parent were ever able to assume her custody."
We find that the record lacks clear, cogent, and convincing evidence to establish that the father willfully, substantially and continuously neglected to provide the child with necessary care and protection. At the time of trial, the father expected to be released in less than a year, in April 2018.[7] While in prison, the father completed numerous courses in an effort to improve his parenting capabilities, including those for substance-abuse treatment, first aid, parenting skills, communication skills, and anger management. The father testified that he had been sober for four years and ten *480 months at the time of trial, that he attended AA meetings, and that he planned to again participate in the Celebrate Recovery 12-step program when it resumed later in 2017. He explained that he participated in programs in prison when and where available to help him connect with the child, specifically Project Angel Tree and Story Link. The father and the guardians testified that the father regularly wrote the child letters, sent her cards and drawings, and telephoned her. Twice the guardians took the child to visit the father, and twice the paternal grandmother took the child to visit. L.F. testified that the child knows who the father is, calls him "Daddy [M.]," and asks when he will call her.
It is true that the father paid no child support. While we do not condone a parent's lack of financial support for a child, failure to provide support, by itself, does not warrant termination of parental rights. R.M. , 234 S.W.3d at 622. The father testified that he had $8.50 per month to live on in prison, and "make[s] sacrifices just to make phone time and call and talk to my daughter." The guardians in their brief acknowledge that $1 per month in child support from the father-which is typically ordered for incarcerated parents to pay-would be a purely symbolic gesture to show the father's interest in the child. See, e.g., E.K.L. v. A.L.B. , 488 S.W.3d 764, 769 (Mo. App. W.D. 2016) (stating that although incarcerated parent's financial contribution will not significantly assist in providing necessities for child, it demonstrates parent's intent to continue relationship). Yet neither the guardians nor the trial court acknowledged that the father has demonstrated his care for and interest in the child through his efforts to arrange for a safe and stable placement for the child with K.F. and L.F.; through cards, letters, and drawings the father regularly sent to the child; through the father's regular telephone calls to the child; through the father's visits with the child when available; through his efforts to learn about the child's health, education, and well-being from her guardians; and through his efforts to equip himself to care for his child upon his release from prison.
To support a finding of willful neglect, a parent's failure to contribute to the financial support of his child must be coupled with evidence of a lack of contact. R.M. , 234 S.W.3d at 622. See also S.S.S. , 529 S.W.3d at 818 (observing that Court of Appeals has stated " '[n]eglect' is ultimately a question of an intent to forego 'parental duties,' which includes both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with the child.") The record here contains no such evidence of a lack of meaningful contact. To the contrary, the father, L.F., and K.F. all testified that the father maintained regular contact with the child via mail and telephone. The record reveals that the father has made great efforts to connect with his child and to have regular, meaningful contact with her. Furthermore, the father completed numerous programs while in prison, demonstrating efforts to adjust his circumstances to become a more capable parent for the child upon his release from prison.
The guardians filed a brief arguing that we should uphold the termination because the father's incarceration was the result of his own voluntary acts. While true, this would be true of almost all prisoners who are parents. Yet no law requires forfeiture of their parental rights upon conviction.
We do not condone a parent's failure to provide financial support for his child. Here, however, we find the absence of this symbolic gesture of paying $1 child support is rendered meaningless by the presence *481 of the father's actual conduct evidencing his care and interest.
Conclusion
We find that the record contains no clear, cogent, and convincing evidence to support the trial court's determination that the father willfully, substantially, and continuously neglected to provide the child with necessary care and protection during the statutory period. We reverse the judgment terminating the father's parental rights, and remand with instructions for the trial court to deny the petition for adoption.
Given our resolution of this case, the parties may seek appropriate orders from the Circuit Court of Jefferson County in the guardianship case concerning the father's visitation or custody or termination of the guardianship, as circumstances warrant.
SHERRI B. SULLIVAN, P.J. and JAMES M. DOWD, J., concur.

This case came to us on appeal only after the guardians adopted the child in December 2017. The trial court terminated the father's parental rights in its judgment of September 18, 2017. The father's trial counsel failed to notify the father of the court's judgment until late November 2017, well after the time for appeal of the termination of the father's parental rights expired, and trial counsel never sought to file a notice of appeal. The father filed, pro se, a motion for late notice of appeal in December 2017, which this Court granted because of the gravity of terminating the father's parental rights. The father then filed his notice of appeal pro se , and later obtained appointment of new counsel to pursue this appeal.

The mother has not appealed the termination of her parental rights.

Project Angel Trees provides Christinas gifts to children who have a parent in prison. With the Story Link program, an inmate records himself reading a book to his child, and then the book and recording are sent to the child.

536 S.W.2d 30 (Mo. banc 1976).

All statutory references are to RSMo. (2016).

The guardians filed the adoption petition on July 14, 2016; thus, the six-month statutory period commenced January 14, 2016. The trial court's judgment repeatedly misstates the statutory six-month period as beginning in February 2016. This error, however, has no substantive effect on the judgment or on our analysis of the case.

According to the parties' briefs, the father has, indeed, been released.