

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: K.W.C.B., now legally known as K.W.C.W., a Minor Child | ) ) ) ) | |
| D.S.B., | ) ) | WD87594 |
| Appellant, | ) ) | OPINION FILED: |
| v. | ) ) | August 19, 2025 |
| A.L.B. (Mother) and K.W.W. (Father), | ) ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Moniteau County, Missouri**
**The Honorable Robert M. Liston, Judge**

**Before Division One:** Gary D. Witt, Presiding Judge,
Alok Ahuja, Judge, and Karen King Mitchell, Judge

Maternal aunt D.S.B. (Aunt), the court-appointed guardian of the minor child

(Minor), appeals, following a bench trial and judgment denying Aunt's petition to adopt

Minor. Aunt raises four points on appeal. Point I argues the circuit court erred in

denying Aunt's petition after finding that Minor's father (Father) neglected Minor. Point

II argues the circuit court erred in finding that Father did not abandon Minor. Point III

argues that the circuit court erred in not terminating the parental rights of Minor's mother

(Mother). Point IV argues that the circuit court erred in denying Aunt's adoption petition after stating that adoption would be in Minor's best interest. Finding no error, we affirm.

## Background[1]

Mother gave birth to Minor in September 2017, when both Mother and Father were incarcerated on drug offenses. At Mother's request, Aunt began caring for Minor shortly after he was born, and Aunt was appointed Minor's legal guardian in February 2018. Minor has lived with Aunt in the same home his entire life. It is undisputed that Minor has been well cared for by Aunt and is happy living with her. It is also undisputed that Father and Mother are Minor's biological parents and that neither Father nor Mother consented to Aunt's adoption of Minor.

On October 25, 2023, Aunt filed her petition to adopt Minor, alleging that both Mother and Father "willfully abandoned" and "willfully, substantially and continuously neglected" Minor "for a period of time greater than the past six months." During the June 2024 bench trial, the court heard testimony from Aunt, Father, Mother, Minor's therapist, and Minor's teacher. Mother, who has been either incarcerated or contending with criminal drug offenses for much of Minor's life, testified from prison. Father testified that he was incarcerated for drug offenses "more than half" of the time between Minor's birth in September 2017 and January 2020. In January 2020, he was charged with drug possession but avoided arrest until March 2023, at which point he was placed

---

[1] We view the facts "in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014).

on probation. During those "three years on the run," Father kept in touch with Minor by way of video chats and phone calls, visiting in person only two or three times. Father testified that, since 2020, he has not used drugs and has maintained steady employment; he also married in 2020 and lives with his wife and Minor's brother (the child of Mother and Father). The testimony from Minor's therapist and teacher corroborated other testimony that Minor was happy living with Aunt and that Aunt had provided a good home for Minor. However, Minor knew that Father and Mother were his parents. Father testified that Minor calls him Dad or Daddy and that Minor said he loved Father.

The court entered judgment denying Aunt's petition on August 25, 2024. Although it found "that [Minor's] best interests would be best served by the granting of a decree of adoption," it found the evidence insufficient "to terminate the parental rights of either parent." The court found that, although Father's contact with Minor in years past was less frequent, "[d]uring the six months prior to the filing of this [adoption] petition, Father has had much more regular contact with [Minor]." The circuit court made this finding although there was conflicting evidence on the amount of contact Father had with Minor during the relevant time. Father testified that, during the six-month period before the petition was filed, he had near daily electronic contact with Minor along with in-person visits. In contrast, Aunt testified that Father's contacts were far less frequent. But the court found that Father's contacts with Minor were likely "more frequent" than Aunt claimed and that Father had "maintained a meaningful relationship" with Minor during the six-month period preceding the filing of Aunt's adoption petition. However,

3

the court found that Father did not contribute a significant financial amount to Minor's care during that time or previously.

As for Mother, the court found she had only "sporadic contact" with Minor throughout his life but stated that Mother was incarcerated too often to have established "a pattern of neglect." The court also found "no evidence to support [Mother's] ability to provide any [financial] support."

**Analysis**

Aunt, the court-appointed guardian of Minor, appeals, following a bench trial and judgment denying her petition to adopt Minor. Aunt raises four points on appeal. Point I argues the circuit court erred in denying Aunt's petition after finding that Father neglected Minor by failing to provide financial support. Point II argues the circuit court erred in finding that Father did not abandon Minor. Point III argues that the circuit court erred in not terminating Mother's parental rights. Point IV argues that the circuit court erred in denying Aunt's adoption petition after stating that adoption would be in Minor's best interest.

We must affirm the trial court's judgment following a bench trial "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To comply with Rule 84.04(d)(1),[2] "a

---

[2] All rule references are to the Missouri Supreme Court Rules (2025). Rule 84.04(d)(1)(B) requires that each Point Relied On "[s]tate concisely the legal reasons for the appellant's claim of reversible error."

4

point on appeal must proceed under *one* of the *Murphy v. Carron* grounds, each of which requires a distinct analytical framework." *Deutsche Bank Nat'l Tr. Co. v. Luna*, 655 S.W.3d 820, 826 n.3 (Mo. App. W.D. 2022) (emphasis added) (quoting *Ebert v. Ebert*, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021)).  If that requirement is not met, "Rule 84.04 directs us to dismiss the point" but allows us to review the non-compliant brief  "when the argument is readily understandable." *Id.* (quoting *Ebert*, 627 S.W.3d at 580, 585).

Each of Aunt's Points Relied On purports to rely on all four of the *Murphy* grounds instead of specifying which one supports her claim of error, thus her points do not comply with Rule 84.04(d)(1).  However, we exercise our discretion to review her brief because we believe we can understand her arguments and discern the applicable standard of review for each.

Because Mother and Father did not consent to Aunt's adoption of Minor, the court could grant Aunt's petition only by terminating their parental rights.  *See In re F.L.M.*, 561 S.W.3d 474, 478 (Mo. App. E.D. 2018).  "A prerequisite to an adoption under Chapter 453 is the natural parents' consent or the involuntary termination of their parental rights." *In re J.M.J.*, 404 S.W.3d 423, 429 (Mo. App. W.D. 2013), *abrogated on other grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811, 816 n.3 (Mo. banc 2017).  "The quality of the adoptive home is not a part of the termination inquiry; rather, the focus is on the natural parent's interactions and relationship with the child." *In re F.L.M.*, 561 S.W.3d at 478 (quoting *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 822 (Mo. banc 2001), *abrogated on other grounds by S.S.S.*, 529 S.W.3d at 816 n.3).  We bear in mind that termination of parental rights is an "extreme penalty" to impose, *In re F.L.M.*, 561

5

S.W.3d at 479, and is "among the most serious acts that a court can undertake." *In re M.N.V.*, 630 S.W.3d 829, 836 (Mo. App. E.D. 2021). Therefore, "[t]he trial court must *first* consider the question of termination of parental rights in contested Chapter 453 adoption cases in order to avoid confusing the quality of the adoptive home with the grounds for terminating parental rights." *In re F.L.M.*, 561 S.W.3d at 478 (emphasis added). And adoption statutes "are strictly construed in favor of natural parents." *Matter of A.L.H.*, 906 S.W.2d 373, 375 (Mo. App. E.D. 1995).

## I. The circuit court did not err in failing to terminate Father's parental rights and denying Aunt's adoption petition after making a fact finding that Father had neglected Minor by failing to provide financial support (Point I).

We interpret Aunt's Point I as an argument that the circuit court erroneously applied the law, as she argues that the circuit court was required to grant her petition because it found that Father had neglected Minor. Specifically, the circuit court found that Father had "for long periods" ignored his financial obligation to support Minor and that "[t]his form of neglect continues to this day." "Claims that the circuit court erroneously declared or applied the law are reviewed *de novo*." *Singleton v. Singleton*, 659 S.W.3d 336, 341 (Mo. banc 2023).

Aunt argues that "abandonment" and "neglect" are separate bases under which her adoption petition could be granted, thus she appears to argue that the court's finding of financial neglect requires judgment in her favor. Aunt relies on § 453.040, which was amended in 2021. The current version of § 453.040, effective August 28, 2021, applies here because Aunt's petition was filed in 2023. We first note that Aunt supports her argument with cases decided before the 2021amendment, such as *In re M.N.V.*, 630

S.W.3d 829 (Mo. App. E.D. 2021), and *In re J.M.J.*, 404 S.W.3d 423 (Mo. App. W.D. 2013), which interpreted language in the previous version of § 453.040 that read:

> (7) A parent who has *for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.*

RSMo. 1939 (emphasis added). Case law interpreted this version of the statute to create two separate bases for non-consensual adoption. *See E.K.L. v. A.L.B.*, 488 S.W.3d 764, 766-67 (Mo. App. W.D. 2016). In *E.K.L.*, the court recognized that "[t]he terms 'abandonment' and 'neglect' in section 453.040 are used in the disjunctive; thus 'either ground, if supported by substantial evidence, will obviate the need for parental consent to an adoption.'" *Id.* at 766 (quoting *In re J.M.J.*, 404 S.W.3d at 432).

The amended version of § 453.040(7) deleted the italicized language above in describing the conduct that would allow adoption without consent. The current version addresses only "abandonment" as a basis for adoption without consent but defines conduct that constitutes abandonment by cross-referencing § 211.447, which includes language identical to that previously included in § 453.040(7) and interpreted by the courts to create a separate ground for allowing non-consensual adoption based on neglect. Section 453.040(7) now provides

> (7) A parent who has abandoned a child as described in paragraph (b) of subdivision (2) of subsection 2 of section 211.447[3] or paragraph (b) of subdivision (1) of subsection 5 of section 211.447.

---

[3] Section 211.447.2(2)(b) applies to a child under two years of age.

In relevant part, § 211.447 reads:

> 5.  The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
>
> (1)  The child has been abandoned.  For purposes of this subdivision a **"child"** means any child two years of age or older at the time of filing of the petition.  The court shall find that the child has been abandoned if, for a period of six months or longer:
>
> . . .
>
> (b)  The parent has, for a period of six months immediately prior to the filing of the petition for termination of parental rights, willfully, substantially, and continuously neglected to provide the child with necessary care and protection[.]

We need not decide whether, under the amended version of § 453.040, neglect is a separate basis for granting adoption without consent, because even under the previous version of the statute the failure to provide financial support, alone, was not sufficient to allow non-consensual adoption.

The main flaw in Aunt's argument is that Father's parental rights could not be terminated solely due to neglect of financial obligations.  Pursuant to § 453.040(7), which refers to § 211.447.5(1)(b) for children over two years of age, "abandonment" occurs if the parent, "for a period of six months" before the petition's filing, has "willfully, substantially, and continuously neglected to provide the child with necessary care and protection."  The statute's "necessary care and protection" provision includes "both the obligation to provide financial support for a minor child, as well as the obligation to maintain meaningful contact with the child."  *In re K.J.L.*, 675 S.W.3d 767, 776 (Mo. App. E.D. 2023) (quoting *In re M.N.V.*, 630 S.W.3d at 837).  Failure to provide both

8

types of care are required for a finding of "abandonment"; a parent's "[f]ailure to provide financial support, by itself, does not warrant termination of parental rights." *In re F.L.M.*, 561 S.W.3d at 479 (citing *In re R.M.*, 234 S.W.3d 619, 622 (Mo. App. E.D. 2007)).

Here, the circuit court concluded that, during the relevant six-month period, Father had maintained a "meaningful relationship" with Minor, even though he failed to provide significant financial support. Because the court did not conclude that both requirements necessary to show Father's abandonment of Minor under § 453.040(7) were met, the court did not erroneously declare or apply the law in denying Aunt's adoption petition. Point I is denied.

## II. Because Aunt did not meet her burden of proving that Father's parental rights should be terminated, the circuit court did not err in denying Aunt's adoption petition (Points II and III).

In Point II, Aunt appears to argue that there was insufficient evidence to support the circuit court's finding that Father did not abandon Minor.[4] To succeed on a claim of

---

[4] Alternatively, if Aunt's Point II is an against-the-weight-of-the-evidence challenge, the point fails because she has failed to perform the required four-step analysis:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
> (2) identify all the favorable evidence in the record supporting the existence of that proposition;
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Wright v. Nash*, 652 S.W.3d 246, 255 (Mo. App. W.D. 2022) (quoting *Reichard v. Reichard*, 637 S.W.3d 559, 589 (Mo. App. W.D. 2021)). And here, such a claim would

insufficient evidence, Aunt must establish that the judgment below was not supported by substantial evidence. *See Kansas City Live Block 125 Retail, LLC v. Bhakta*, 476 S.W.3d 326, 330 (Mo. App. W.D. 2015). "Substantial evidence is evidence that, if believed, has some probative force on each fact necessary to sustain the trial court's judgment." *Id*. A judgment lacks the support of "substantial evidence" when "there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014).

Under this standard, we "view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations." *Id.* "Circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* Given the deference afforded the trial court, we must affirm its judgment unless "the trial court's decision 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *In re S.H.P.*, 638 S.W.3d 524, 529 (Mo. App. W.D. 2021) (quoting *In re C.D.G.*, 108 S.W.3d 669, 674 (Mo. App. W.D. 2002)). Aunt, the party seeking to adopt Minor, has the burden of proof. *See Bhakta*, 476 S.W.3d at 330. In essence, it appears that Aunt is arguing that the circuit court should have accepted her evidence regarding the amount of contact between Father and Minor during the relevant

---

fail even if presented properly because, although a different result "may also be reasonable . . . , this Court must defer to the circuit court's assessment of the evidence and its findings when the evidence poses two reasonable but different inferences." *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 817 (Mo. banc 2017) (affirming the circuit court's finding of a father's willful abandonment on a "weight of the evidence" claim despite—as noted in the three-judge dissent—evidence of "continuous contact" between father and child).

period of time and that Father did not present sufficient testimony to overcome her evidence. But this argument ignores our standard of review.

As discussed above, parental rights cannot be terminated without consent unless the parent has abandoned the child by failing to satisfy "both the obligation to provide financial support [and] the obligation to maintain meaningful contact with the child." *E.K.L.*, 488 S.W.3d at 768 (quoting *In re T.S.D.*, 419 S.W.3d 887, 895 (Mo. App. E.D. 2014)). Abandonment is a matter of intent inferred from the parent's conduct. *In re E.M.F.*, 671 S.W.3d 866, 870 (Mo. App. S.D. 2023). Parents cannot avoid a finding of abandonment by "maintain[ing] only a superficial or tenuous relationship" with the child. *In re C.M.D.*, 18 S.W.3d 556, 562 (Mo. App. W.D. 2000). Thus, mere "token" efforts are given "little or no weight." *Id.* Instead, "the quality of contacts and visits" is considered. *S.S.S.*, 529 S.W.3d at 816. To determine parental intent, the court considers the parent's conduct "before, during, and after the statutory period," but "the greatest weight is given to conduct during the statutory period"—the six months preceding the filing of the adoption petition. *In re M.N.V.*, 630 S.W.3d at 837.

The circuit court, as required, gave the greatest weight to Father's conduct during the six-month period preceding Aunt's filing, finding so "much increased contact" during that period that the court "[could not] honestly find and believe that Father's efforts to establish a relationship with [Minor were] either 'superficial' 'or tenuous.'" The court pointed out that Father's less commendable conduct (in failing to provide financial support while providing "only sporadic contact") occurred before the six-month period, making the case "as much a question of Father's repentance" as it was abandonment.

11

Ultimately, the court found that Father maintained a "meaningful relationship" with Minor during the six-month period, even though Father at the same time "ignored his obligation to support his child."

The circuit court acknowledged that its decision was difficult, speculating that Aunt's petition would have been "much better supported by the evidence" had it been filed earlier. But the court found that Father "went out and had himself named as the father" on Minor's birth certificate; that Father had far more frequent contact with Minor in 2023 and maintained regular video contact with Minor even while Father recovered from abdominal surgery in June and July 2023; and that Father, employed and living with his current wife and Minor's sibling, was "trying to establish a family that included [Minor]." And the court did not believe—and did not have to believe—Aunt's testimony that Father's video/phone calls with Minor in 2023 were sporadic, "[m]aybe once a week, maybe once every two weeks," instead finding that Father's contacts "were likely more frequent than one time per week."

Therefore, Aunt's Point II fails because substantial evidence supports the circuit court's conclusion that Father maintained a meaningful relationship with Minor that precluded the termination of his parental rights, without which Aunt could not adopt Minor. And because the circuit court could not grant Aunt's adoption petition unless it found sufficient evidence to terminate the parental rights of *both* Mother and Father, Aunt's Point III (arguing error in not terminating Mother's rights) is moot. Aunt's Points II-III are denied.

### III. The trial court did not err in denying Aunt's adoption petition after finding that adoption would be in Minor's best interest (Point IV).

In Point IV, Aunt reiterates the argument that both parents abandoned Minor[5] and that Aunt had provided Minor a stable, loving home, concluding that such evidence established that adoption was in Minor's best interest and, therefore, the court had to grant her petition. And the circuit court did state that adoption by Aunt would be in Minor's best interest "because of the idea that [Aunt's home] is home. . . . It's what he's used to." We therefore interpret Aunt's Point IV as an argument that the circuit court erroneously applied the law, and we review the claim *de novo*. *See Singleton*, 659 S.W.3d at 341.

We acknowledge that § 453.040 must be "construed so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." § 453.005.1. But the quality of the home Aunt provided, while undisputed, was not the first determination the circuit court had to make in addressing Aunt's adoption petition. Because Father and Mother did not consent to the adoption, the court had to determine, as a preliminary matter, if the parents' rights could be terminated. *See In re F.L.M.*, 561 S.W.3d at 478 (cautioning circuit courts not to confuse "the quality of the adoptive home with the grounds for terminating parental rights"). The child's best interest, while a primary factor in adoption requests, is "not reached if willful abandonment is not first established." *In re Adoption of W.B.L.*, 647

---

[5] As stated above regarding Points II-III, the circuit court did not err in finding Minor had not been abandoned by both parents.

S.W.2d 531, 534 (Mo. banc 1983); *T.D.T. v. J.L.S.*, 675 S.W.2d 913, 916 (Mo. App. W.D. 1984) (holding that "[o]nly after determining there has been a willful abandonment" by the parent "will the issue of the child's best interest be reached").

The circuit court could not grant Aunt's petition because, pursuant to § 453.040(7), neither parent consented to the adoption and the court did not find that both parents had abandoned Minor. The court's factual finding that Minor's "best interests would be best served" by Aunt's adoption was not (and could not be) its legal conclusion requiring Aunt's adoption of Minor; at best, it was the court's acknowledgment of Aunt as a suitable adopter had Minor been abandoned by his parents. But, by law, the court could not reach that determination because it had not made the preliminary finding that these parents had forfeited their parental rights. We therefore find no erroneous application of law in the court's conclusion that, because Minor had not been abandoned by both parents, the court could not grant Aunt's adoption petition. Point IV is denied.

## Conclusion

Based on the foregoing, the circuit court's judgment is affirmed.

_____
Karen King Mitchell, Judge

Gary D. Witt, Presiding Judge, and Alok Ahuja, Judge, concur.

14